# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARBEL MAKSOUD, an individual,<br><br>Plaintiff,<br><br>v.<br><br>PHILIPPE GUELTON, an individual; et al.,<br><br>Defendants. | Case No.: 3:17-cv-00362-H-WVG<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT SOLUTIONS IQ, INC.'S MOTION TO DISMISS**<br><br>**[Doc. No. 19]**<br><br>**(2) GRANTING DEFENDANT PILLSBURY WINTHROP SHAW PITTMANN, LLP AND CHRISTIAN SALAMAN'S MOTION TO DISMISS**<br><br>**[Doc. No. 20]**<br><br>**(3) GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT TIRRELL PAYTON'S MOTION TO DISMISS**<br><br>**[Doc. No. 22]** |

///

///

On February 23, 2017, Plaintiff Charbel Maksoud ("Plaintiff") filed a complaint asserting various causes of action relating to Plaintiff's investment in BT Software and Research, Inc. (Doc. No. 1.) On April 28, 2017, Plaintiff filed a First Amended Complaint ("FAC"). (Doc. No. 16.) The FAC contains nineteen causes of action against eleven named defendants. (Id.) On May 10, 2017, Defendant Solutions IQ, Inc. filed a motion to dismiss the FAC for failure to state a claim. (Doc. No. 19.) On May 10, 2017, Defendants Pillsbury Winthrop Shaw Pittman, LLP and Christian Salaman filed a motion to dismiss for failure to state a claim. (Doc. No. 20.) On May 12, 2017, Defendant Tirrell Payton filed a motion to dismiss for failure to state a claim and failure to join an indispensable party. (Doc. No. 22.) On May 22, 2017, Plaintiff filed responses in opposition to defendants' motions to dismiss. (Doc. Nos. 25-27.) On June 1, 2017, Defendants Pillsbury Winthrop Shaw Pitman, LLP and Christian Salaman filed a reply. (Doc. No. 29.) On June 2, 2017, Defendant Solutions IQ, Inc. filed a reply. (Doc. No. 31.) On June 5, 2017, Defendant Tirrell Payton filed a reply. (Doc. No. 32.)

## BACKGROUND

These facts are taken from Plaintiff's complaint. (Doc. No. 16.) During the relevant times, Plaintiff resided in Joplin, Missouri. (Id. ¶ 14.) Through his neighbors, Bruce and Schrell Hopkins ("the Hopkins"), Plaintiff was introduced to Defendant Tirrell Payton ("Payton"). Plaintiff was also introduced to Defendant Philippe Guelton ("Guelton") who owned a marketing company, SheKnows Media, (id. ¶ 15), and Defendant Paul Woodhull ("Woodhull") and Defendant Shawn Smith ("Smith") who worked for Momentum Marketing, (id. ¶ 16).

Payton and the Hopkins were in the process of starting a company named BT Software and Research, Inc. ("BT"). (Id.) Following the incorporation of BT, Plaintiff understood that Bruce Hopkins was the president and Payton was the Chief Executive Officer. (Id. ¶14.) Plaintiff also understood that Guelton was a principal of BT. (Id. at 15.)

After meeting defendants, Plaintiff alleges he was convinced to invest $250,000 in BT to help develop an application called "Kaliki," intended to be a media platform. (Id. ¶ 19.) Plaintiff was told that Kaliki already had major contacts with automobile manufactures, as well as media conglomerates. (Id. ¶ 20.) In exchange for his $250,000, Plaintiff was to receive an upfront 2.5% equity interest in BT, which would mature to 7.5% after two years. (Id. ¶ 21.) This amount was based on representations by Bruce Hopkins, Guelton, and Payton that BT had a valuation of $10,000,000. (Id. ¶ 21.) Bruce Hopkins and Payton also gave Plaintiff a document showing that a company, AdLarge, had invested additional monies in BT. (Id. ¶¶ 24, 25.) In consummating his investment, Plaintiff signed a Common Stock Purchase Agreement in May 2014. (Id. ¶ 34.)

Following the investment, Plaintiff worked to create relationships with media companies in an attempt to market and advance Kaliki. Plaintiff also recruited his now deceased brother-in-law, Nadeem Baaklini, to develop a software search engine, OnSay. (Id. ¶ 27.) Plaintiff claims Defendants promised Baaklini would receive a 4% equity in BT and a lifelong salary of $200,000 per year for the development of OnSay. (Id. ¶ 138.) After Baaklini died, the OnSay project was near completion and Plaintiff is the assignee of all of Baaklini's claims. (Id. ¶ 28-29.)

Plaintiff alleges that, following his investment, defendants failed to complete their side of the bargain and misused his $250,000. Plaintiff alleges that, as part of his investment, he was to receive his stock certificates but never did. Plaintiff understood that Defendant Christian Salaman ("Salaman") and his law firm, Pillsbury Winthrop Shaw Pittman, LLP ("Pillsbury"), were responsible for drafting the documents but never did so. (Id. ¶ 23.) Plaintiff also claims that Payton and his wife, Defendant Susan Payton, misappropriated money from BT and used that money to further Payton's career with Solutions IQ, Inc. (Id. ¶ 31.)

As of the date of his complaint, Plaintiff claims he never received his shares of BT and BT was ultimately forfeited. (Id. ¶¶ 6, 33.)

///

# ANALYSIS

## I. LEGAL STANDARD FOR MOTION TO DISMISS

A motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted. Conservation Force v. Salazar, 646 F.3d 1240, 1241 (9th Cir. 2011). A complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The pleadings must go beyond "labels and conclusions" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. A "formulaic recitation of the elements" is not enough. Id.; accord Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

When reviewing a motion to dismiss, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 945 (9th Cir. 2014). The court need not, however, accept "legal conclusions" as true. Iqbal, 556 U.S. at 678. Thus, pleadings unsupported by factual allegations are not entitled to a presumption of truth. Id. ("It is the conclusory nature of respondent's allegations . . . that disentitles them to the presumption of truth.").

## II. PLEADING STANDARD FOR FRAUD

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Federal courts apply this standard regardless of whether the substantive law is state or federal. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003). To satisfy the heightened standard of Rule 9(b), the pleadings must be "specific enough to give defendants notice

of the particular misconduct . . . so they can defend against the charge and not just deny that they have done anything wrong." Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting Neubronner v. Milken, 6 F.3d 666, 671 (9th Cir. 1993)). Put another way, the pleadings must provide "'the who, what, when, where, and how' of the misconduct charged." Vess, 317 F.3d at 1106 (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)).

The heightened pleading standard of Rule 9(b) applies to all claims "grounded in fraud" and may include claims where fraud is not a required element. Id. at 1103-1104. "Where fraud is not an essential element of a claim, only those allegations of the complaint which aver fraud are subject to Rule 9(b)'s heightened pleading standard." Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009). If the averment fails to meet the heightened standard, then the Court should disregard the fraud allegations and analyze the sufficiency of the claim only as to the non-fraudulent conduct. Id.

### III. SOLUTIONS IQ, INC.'S MOTION TO DISMISS

Plaintiff names Defendant Solutions IQ, Inc. ("Solutions") in four of his claims: (1) unjust enrichment, (Doc. No. 16 at 7), (2) restitution, (id. at 9), (3) constructive trust (id. at 20), and (4) declaratory relief, (id. at 25). Solutions argues that all of the claims against it should be dismissed because Plaintiff has not met his burden at the pleading stage. (Doc. No. 19-2 at 2.) The Court agrees with Solutions.

Plaintiff has failed to offer sufficient facts to establish a plausible claim against Solutions. Twombly, 550 U.S. at 570. The FAC provides only one allegation of wrongdoing against Solutions: that Solutions "knowingly and/or negligently accepted funds from [Defendant] Tirrell." (Doc. No. 16 ¶ 31.) This bare assertion, based solely on Plaintiff's information and belief, is precisely the type of legal conclusion that is not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. And because the FAC provides no other facts to support Plaintiff's claims against Solutions, it does not provide "fair

5

3:17-cv-00362-H-WVG

notice of what [Plaintiff's] claim is and the grounds upon which it rests. Conley v. Gibson, 355 U.S. 41, 47 (1957). As such, the Court grants Solutions' motion to dismiss.[1]

When dismissing a complaint, "leave to amend should be granted unless the district court determines the pleading could not possibly be cured by the allegation of other facts." Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000)). In his opposition brief, Plaintiff argues he is able to assert additional facts to cure any deficiency against Solutions. (Doc. No. 26 at 13-14.) Thus, the Court dismisses Plaintiff's claims against Solutions with leave to amend.

## IV. **PILLSBURY MOTION TO DISMISS**

Plaintiff named Defendants Pillsbury Winthrop Shaw Pittman LLP and Christian Salaman (together the "Pillsbury Defendants") in two of his claims: (1) breach of fiduciary duties of care and loyalty, (Doc. No. 16 at 12), and (2) professional negligence, (id. at 19). The Pillsbury Defendants represented BT as legal counsel during the relevant times. (Id. ¶ 22; see also Doc. No. 20-1 at 4.) As counsel for BT, Plaintiff alleges the Pillsbury Defendants violated their duties to Plaintiff. The Pillsbury Defendants move to dismiss, arguing they never owed Plaintiff any duties because there was no attorney-client relationship. (Doc. No. 20-1 at 7.)

To plead a breach of fiduciary duties, Plaintiff must allege facts showing "the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach." Pierce v. Lyman, 1 Cal.App.4th 1093, 1101 (1991). To plead the tort of professional negligence, Plaintiff must allege facts showing the Pillsbury Defendants owed him a duty "to use such skill, prudence and diligence as other members of his profession commonly possess and exercise," a breach of that duty, and causation. Turpin

---

[1] Because Plaintiff's claim against Solutions fails to meet the pleading standard under Fed. R. Civ. P. 8, the Court does not address whether Plaintiff's claims against Solutions must meet the higher pleading standard of Rule 9.

v. Sortini, 31 Cal.3d 220, 229-30 (1982). Because these two claims overlap substantially, the Court analyzes them together.

"A key element of any action for professional malpractice is the establishment of a duty by the professional to the claimant." Moore v. Anderson Zeigler Disharoon Gallagher & Gray, 109 Cal.App.4th 1287, 1294 (2003); accord Navellier v. Sletten, 262 F.3d 923, 234 (9th Cir. 2001). "An attorney-client relationship normally is essential to the existence of an attorney's duty toward others." Berg & Berg Enters., LLC v. Sherwood Partners, Inc., 131 Cal.App.4th 802, 826 (2005). This is especially true when "the attorney's client and the third party are adverse, as the attorney's duty of loyalty to his or her client cannot be divided or diluted by a duty owed to a third party." Id.

Under the general rule, Plaintiff has not established a basis for liability against the Pillsbury Defendants. Plaintiff does not allege that the Pillsbury Defendants ever represented him. (See generally Doc. No. 16.) Indeed, the Purchase Agreement Plaintiff included in the Complaint states that "[Plaintiff] agrees that Pillsbury Winthrop Shaw Pittman LLP has acted as counsel for [BT] and no other Person in connection with this Agreement and the Pillsbury Winthrop Shaw Pittman LLP has not previously had, and will not have by virtue of this Agreement, any attorney-client relationship with [Plaintiff]." (Doc. No. 16-1 at 28.) Furthermore, because BT and Plaintiff were counterparties to the agreement, the Pillsbury Defendants' duties to their client, BT, cannot be divided or diluted to include obligations to Plaintiff. Berg & Berg Enters., LLC, 131 Cal.App.4th at 826.

Neither has Plaintiff established liability under the intended beneficiary doctrine. As an exception to the general rule, "an attorney may be liable to nonclients in limited circumstances where the nonclient was the intended beneficiary of the attorney's service." Moore, 109 Cal.App.4th at 1294-95; accord Schick v. Lerner, 193 Cal.App.3d 1321, 1330 (1987). This exception, however, does not apply to adverse parties. Id. As the Court in Schick explained, an adverse party cannot be an intended beneficiary of an attorney's services because it would divide the attorney's loyalty and "impermissibly

intrude upon the attorney-client relationship." Id.; accord Goodman v. Kennedy, 18 Cal.3d 335, 344 (1976) ("To make an attorney liable for negligent confidential advice not only to the client who enters into a transaction in reliance upon the advice but also to the other parties to the transaction with whom the client deals at arm's length would inject undesirable self-protective reservations into the attorney's counselling role."); Omega Video Inc. v. Superior Court, 146 Cal.App.3d 470, 480 (1983) ("[A]n attorney may not be sued for negligent representation of a client by an adverse party in an action who claims to have suffered resulting injury from such negligence."). When Plaintiff entered into the stock purchase agreement with BT, Plaintiff and BT were adverse parties. Thus, Plaintiff cannot show he was the intended beneficiary of the Pillsbury Defendants' services.

Plaintiff argues the Pillsbury Defendants owed it "an independent legal duty not to defraud individuals engaged in business transactions with his or her client." Favila v. Katten Munchin Rosenman LLP, 188 Cal.App.4th 189, 210 (2010). The Court need not decide, at this time, whether Plaintiff can state a claim under Favila because, even if he could, Plaintiff has failed to specifically plead fraud against the Pillsbury Defendants.

To bring a claim under Favila, Plaintiff needs to allege fraud with specificity. Vess, 317 F.3d at 1103-04. Plaintiff has not done so. Plaintiff's allegations against the Pillsbury Defendants are mere conclusory recitations of the elements of a claim. For example, with regards to the Breach of Fiduciary Duties claim, Plaintiff states that "Pillsbury knew or at a minimum should have known that its clients were absconding Plaintiff's funds and using those funds for an improper purpose." (Doc. No. 16 ¶ 71.) Similarly, Plaintiff claims the Pillsbury Defendants breached its duties by (1) "misrepresenting the nature of Plaintiff's equity interest in BT", (2) "acquiescing to, or at a minimum negligently allowing, the misappropriation of Plaintiff's $250,000 investment," and (3) "negligently failing to oversee and properly counsel BT's corporate governance." (Id. ¶ 72.) None of these allegations address the who, what, when, where, and how. Instead, they simply provide conclusory recitations of the elements of a claim.

Plaintiff has not described the Pillsbury Defendants' specific misrepresentations, when those misrepresentations were made, who made them, how the Pillsbury Defendants would have known they were incorrect, how Plaintiff relied on them, or whether the Pillsbury Defendants benefited from them in any way. At bottom, Plaintiffs allegations are not "specific enough to give defendants notice of the particular misconduct . . . so they can defend against the charge and not just deny that they have done anything wrong." Bly-Magee, 236 F.3d at 1019. Thus, the Court grants the Pillsbury Defendants' motion to dismiss. However, because Plaintiff claims, in his opposition brief, to be able to assert additional facts, the Court grants leave to amend. Bly-Magee, 236 F.3d at 1019. If Plaintiff choses to amend their claims against the Pillsbury Defendants, he must also plead facts sufficient to establish their citizenship and why diversity jurisdiction is proper. See, e.g., Carden v. Arkoma Assocs., 494 U.S. 185, 195 (1990).

## V. **PAYTON MOTION TO DISMISS**

Plaintiff named Defendant Payton ("Payton") in fourteen claims. (Doc. No. 16.) Payton moves to dismiss all of Plaintiff's claims because (1) Plaintiff has failed to join an indispensable party and (2) fails to state a claim. The Court first addresses the indispensable party argument, and then address each of the fourteen claims in turn.

### A. Indispensable Party

Plaintiff's original complaint included Bruce Hopkins as a defendant. (Doc. No. 1.) On April 7, 2017, the Pillsbury Defendants filed a motion to dismiss, arguing, among other things, that the presence of Bruce Hopkins destroyed diversity jurisdiction. (Doc. No. 3.) On April 12, 2017, Plaintiff filed a notice of dismissal as to Bruce Hopkins and his wife, Schrell Hopkins. (Doc. No. 7.) Plaintiff then filed the First Amended Complaint that does not include claims against Bruce or Schrell Hopkins. (Doc. No. 16.) Payton argues that Bruce Hopkins is an indispensable party and that Plaintiff's action must be dismissed because it fails to join him. (Doc. No. 22-1 at 24-25.)

"A party is indispensable if his interest is such that a decree cannot be rendered that will not affect his interest, or if such party's absence leaves the controversy in such a

condition that its final determination is wholly inconsistent with equity and good conscience." Trans Pac. Corp. v. South Seas Enters., Ltd., 291 F.2d 435, 436 (9th Cir. 1961). "A nonparty to a commercial contract ordinarily is not a necessary party to an adjudication of rights under the contract." Northrop Corp. v. McDonnell Douglas Corp., 705 F.2d 1030, 1044 (9th Cir. 1983). Similarly, "it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." Temple v. Synthes Corp., Ltd., 498 U.S. 5, 7 (1990). Here, Plaintiff does not allege that Bruce Hopkins was a party to the Stock Purchase Agreement. (See Doc. No. 16-1 at 29.) Thus Bruce Hopkins is not indispensable to the claims arising from the breach of that agreement. Similarly, Bruce Hopkins is not an indispensable party to any of the claims sounding in fraud because, even if the torts were committed jointly, joint tortfeasors are not indispensable. Temple, 498 U.S. at 7. Payton has offered no other reasons why Plaintiff is indispensable and cites no cases in support of such a conclusion. (Doc. No. 22-1 at 24-25.) As such, the Court denies Payton's motion to dismiss for failure to join an indispensable party.

**B. Intentional Misrepresentation**

To plead a claim of intentional misrepresentation, Plaintiff must allege "(1) a misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) actual and justifiable reliance, and (5) resulting damages." Cisco Systems, Inc. v. STMicroelectronics, Inc., 77 F.Supp.3d 887, 897 (N.D. Cal. 2014). Because a claim of intentional misrepresentation simply restates the elements of fraud, each element must be pleaded with particularly. Id.; Fed. R. Civ. P. 9(b). Plaintiff must specifically indicate the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007). Plaintiff's FAC fails to satisfy the heightened pleading standard of Rule 9(b).

In the intentional misrepresentation section of the FAC, Plaintiff entirely fails to indicate which defendant engaged in misrepresentation. (Doc. No. 16.) Instead, the FAC talks generally about what "Defendants" did. For example, "Defendants conspired with one another to induce Plaintiff into investing," "Defendants purposefully misinformed

Plaintiff about the existence of other 'investors,'" and "Defendants purposefully and knowingly concealed the facts from Plaintiff." (Id. ¶ 37.) Similarly, Plaintiff's allegations in the general background section of the FAC improperly lump together defendants. For example, Plaintiff alleges "Defendants PHILIPPE GUELTON, TIRRELL PAYON (sic), SUSAN PAYTON, SHAWN SMITH, PAUL WOODHULL, BT SOFTWARE & RESEARCH, INC., SHEKNOWS MEDIA, MOMENTUM MARKETING, and Does 1-100, inclusive, convinced Plaintiff to invest $250,000.00 into BT." (Doc. No. 16 ¶ 19.) This is not specific. Swartz, 476 F.3d at 764-65 ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together.")

Furthermore, the few allegations of misrepresentation that identify a specific defendant fail to satisfy the heightened pleading standards of Rule 9(b) for other reasons. For example, Plaintiff alleges that "BRUCEPHILIPPE (sic) AND TIRELL (sic) misrepresented that Kaliki already had major contacts with major automobile manufacturers like General Motors and Ford, and had consummated strategic relationships with media conglomerates like the New York Times. In actuality no such contacts ever existed." (Doc. No. 16 ¶ 20.) Although it mentions specific defendants, it fails other reasons. First, it fails to identify the specific time and content of the misrepresentations. Vess, 317 F.3d at 1106. Second, it fails to provide any facts supporting the conclusion that Kaliki never had the promised contacts. Finally, it entirely fails to allege, much less provide facts showing, that Defendants knew these representations were false at the time they were made. Cisco Systems, Inc., 77 F.Supp.3d at 897.

In light of these deficiencies, the Court grants Payton's motion to dismiss Plaintiff's intentional misrepresentation claim with leave to amend.

**C. Unjust Enrichment**

"The elements of an unjust enrichment claim are 'the receipt of a benefit and [the] unjust retention of the benefit at the expense of another.'" Peterson v. Cellco P'ship, 164 Cal.App.4th 1583, 1593 (2008). There can be no unjust enrichment where a plaintiff

receives "the benefit of the bargain." Id. Plaintiff alleges that he did not receive the benefit of the bargain because he was misled by defendants' representations—i.e., that he was defrauded. For example, Plaintiff claims that "Defendants misrepresented that Plaintiff's investment would be used to further the development of Kaliki . . .and Plaintiff reasonably relied on these representations in good faith in deciding to invest in BT." (Doc. No. 16 ¶ 45.) Similarly, "Defendants further represented that Plaintiff would receive, in consideration for his investment an upfront 2.5% equity in BT . . . and Plaintiff reasonably relied on this misrepresentation." (Id. ¶ 46.)

These allegations in support of a claim of unjust enrichment are grounded in fraud and, thus, are subject to the heightened pleading standard of Rule 9(b). Vess, 317 F.3d at 1106 ("Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud."). And like the underlying fraud claim, Plaintiff has not alleged sufficiently specific facts to survive the heightened pleading standard. Accordingly, Plaintiff's claim for unjust enrichment is dismissed with leave to amend.

**D. Restitution**

"A person who has been unjustly enriched at the expense of another is required to make restitution to the other. A person is enriched if he receives a benefit at another's expense." Troyk v. Farmers Grp., Inc., 171 Cal.App.4th 1305, 1339 (2009) (quoting County of Solano v. Vallejo Redevelopment Agency, 75 Cal.App.4th 1262 (1999)). Thus the elements of a restitution claim are identical to those of an unjust enrichment claim. See Bowler v. Home Depot USA Inc., 2010 WL 3619850, *4 (N.D. Cal. Sept. 13, 2010) ("Restitution is defined by the element of "unjust enrichment"). As such, the analysis is identical: Plaintiff's restitution claim is grounded in fraud and he has failed to plead the facts with sufficient particularity. Thus, the restitution claim is dismissed with leave to amend.

**E. Breach of Fiduciary Duties**

To plead a breach of fiduciary duties, Plaintiff must allege facts showing "the existence of a fiduciary relationship, its breach, and damage proximately caused by that

breach." Pierce, 1 Cal.App.4th at 1101.  Plaintiff alleges that Payton owed him fiduciary duties as a shareholder of BT.  (Doc. No. 16 ¶ 65.)  Plaintiff further alleges that Payton breached his duties by misrepresenting the nature of Plaintiff's equity interest, the nature of BT's business, and misappropriating corporate funds.  (Id. ¶ 66.)  Finally, Plaintiff alleges that Payton's breach was the proximate cause of Plaintiff's injury because Plaintiff would not have invested otherwise.  (Id. ¶ 67, 48.)  These facts are sufficient.  Because a defendant can breach their fiduciary duties through negligence, the heightened pleading standard of fraud is not required.  Ash v. North Am. Title Co., 223 Cal.App.4th 1258, 1276 (2014) ("The breach of fiduciary duty can be based upon either negligence or fraud depending on the circumstances.")  Thus, the Court denies Payton's motion to dismiss Plaintiff's claim for breach of fiduciary duty.

**F. Common Count**

"The common count is a general pleading which seeks recovery of money without specifying the nature of the claim." Title Ins. Co. v. State Bd. Of Equalization, 4 Cal.4th 715, 731 (1992).  To plead a claim of common count, Plaintiff must allege "(1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment." Id.  "A cause of action for money had and received is stated if it is alleged the defendant 'is indebted to the plaintiff in a certain sum for money had and received by the defendant for the use of the plaintiff.'" Id.

Plaintiff has failed to allege sufficient facts to state a claim of common count.  Plaintiff's common count claim names eight defendants: Philippe Guelton, Tirell Payton, Susan Payton, Shawn Smith, Paul Woodhull, BT Software and Research, Inc., SheKnows Media, and Momentum Marketing.  (Doc. No. 16 at 13.)  However, Plaintiff fails to identify the "indebtedness in a certain sum" of each defendant.  See Farmers Ins. Exch., 53 Cal.App.4th at 460.  Furthermore, Plaintiff fails to provide facts supporting defendants' indebtedness.  Plaintiff claims he is owed $250,000 but does not provide any factual basis for the indebtedness—contractual or otherwise.

In light of these deficiencies, the Court grants Payton's motion to dismiss the common count claim with leave to amend. Plaintiff must identify the particular individuals from whom he seeks recovery, as well as their individual indebtedness and the basis for such indebtedness.

**G. Intentional Interference with Prospective Economic Relations**

To plead a claim of intentional interference with prospective economic relations, Plaintiff must offer facts showing "(1) an economic relationship between the plaintiff and a third party with the probability of future economic benefit to plaintiff, (2) defendant's knowledge of the relationship, (3) intentional wrongful acts by defendant intended to disrupt the relationship, (4) actual disruption, and (5) economic harm to plaintiff." Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1151 (9th Cir. 2008); Green Hills Software, Inc. v. Safeguard Scientifics and SPC Private Equity Partners, 33 Fed.Appx. 893, 894 (9th Cir. 2002) (citing Della Penna v. Toyota Motor Sales, U.S.A. Inc., 11 Cal.4th 376, 389 (1995)). Plaintiff must "identify with particularity the relationships or opportunities with which [d]efendant is alleged to have interfered." UMG Recording, Inc. v. Global Eagle Entm't, Inc., 117 F.Supp.3d 1092, 1118 (C.D. Cal. 2015). "Allegations that a defendant interfered with a relationship with an 'as yet unidentified' customer will not suffice." Id. at 1117 (citing Westside Ctr. Assocs. v. Safeway Stores 23, Inc., 42 Cal.App.4th 507, 527 (1996)).

Plaintiff's claim for intentional interference with prospective economic relations fails because he has not identified a particular relationship affected by defendants. In his opposition brief, Plaintiff argues he has satisfied the pleading requirements by alleging that defendants' actions prevented him from "using his investment for other endeavors." (Doc. No. 32 at 10.) However, this is precisely the type of ambiguous, as-yet-identified-customer that does not suffice. UMG Recording, Inc., 117 F.Supp.3d at 1118. To survive a motion to dismiss, Plaintiff must identify an actual relationship that was harmed by defendants' conduct. Green Hills Software, Inc., 33 Fed.Appx. at 894. Plaintiff has not done so and, thus, the Court grants Payton's motion to dismiss

Plaintiff's intentional interference with prospective economic relations claim with leave to amend.

**H. Negligent Interference with Prospective Economic Relations**

As with a claim for intentional interference with prospective economic relations, a claim for negligent interference requires Plaintiff plead with particularity "the relationships or opportunities with which [d]efendant is alleged to have interfered." UMG Recording, Inc., 117 F.Supp.3d at 1118. Plaintiff has not identified a particular relationship affected by defendants and, thus, the Court grants Payton's motion to dismiss Plaintiff's negligent interference with prospective economic relations claim with leave to amend.

**I. Unfair Business Practices**

California Business and Professional Code § 17200, also known as the Unfair Competition Law ("UCL"), generally prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Bus. & Prof. Code § 17200. To successfully plead a UCL claim, plaintiff must allege (1) an economic injury, (2) resulting from an unfair business practice. Kwikset Corp. v. Superior Court, 51 Cal.4th 310, 322 (2011). "[A] plaintiff may proceed under the UCL on three possible theories. First, 'unlawful' conduct that violates another law is independently actionable under Section 17200. Alternatively, a plaintiff may plead the defendants' conduct is "unfair" within the meaning of the several standards developed by the courts. Finally, a plaintiff may challenge "fraudulent" conduct by showing that "members of the public are likely to be deceived" by the challenged business acts or practices." Stewart v. Screen Gems-EMI Music, Inc., 81 F.Supp.3d 938 (N.D. Cal. 2015). "A business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." McKell v. Washington Mut., Inc., 142 Cal.App.4th 1457, 1473 (2006). Determining whether a practice was unfair "is

one of fact which requires a review of the evidence from both parties. It thus cannot usually be made on demurrer." Id.

Plaintiff has provided facts that could be considered unfair practices under the broad meaning of the UCL. For example, Plaintiff alleges he was deprived of the benefit of his $250,000 investment because he never received documentation of his investment. Similarly, Plaintiff alleges that defendants improperly used his investment. As a result of these arguably unfair practices, Plaintiff claims he suffered direct economic injury, as he was deprived of his $250,000. In response, Payton has not raised any arguments why Plaintiff's UCL claim fails as a matter of law. As such, the Court denies Payton's motion to dismiss Plaintiff's UCL claim.

**J. Negligence**

"The elements of a negligence cause of action are the existence of a legal duty of care, breach of that duty, and proximate cause resulting in injury." McIntyre v. Colonies-Pac., LLC, 228 Cal.App.4th 664, 671 (2014). In California, officers and directors "have an obligation to shareholders individually not to profit from their official position at the shareholders' expense." Jones v. H. F. Ahmanson & Co., 1 Cal.3d 93, 110 (1969). Plaintiff alleges that Payton was the Chief Executive Officer of BT, thus owing him a duty of care as a shareholder of BT. (Doc. No. 16 ¶ 14.) Plaintiff alleges that Payton breached that duty by, for example, making false statements regarding the valuation of the company and misappropriating his investment. (Id. ¶¶ 17, 19-21.) Finally, Plaintiff alleges his injury, the loss of his $250,000 investment, was proximately caused by these misrepresentations.

Payton's only argument that Plaintiff's negligence claim should fail is that it is grounded in fraud and fails to meet the heightened pleading standard of Rule 9(b). (Doc. No. 22-1 at 12, n. 1.) But this heightened standard is unnecessary. "The breach of fiduciary duty can be based upon either negligence or fraud depending on the circumstances." Ash v. North Am. Title Company, 223 Cal.App.4th 1258, 1276 (2014). Although many of Plaintiff's allegations recite misrepresentations, and thus sound in

fraud, that is not the case for all of them. For example, taking the alleged facts as true, and drawing the inferences in favor of Plaintiff, Plaintiff has alleged that Payton breached his duty of care by misappropriating or otherwise misusing Plaintiff's $250,000 investment. This allegation does not sound in fraud and would be a violation of Payton's duties. Thus the Court denies Payton's motion to dismiss Plaintiff's negligence claim.

### K. Constructive Trust

"[T]hree conditions are necessary for a plaintiff to establish a constructive trust for its benefit: the existence of a res (some property or some interest in property), the plaintiff's right to that rest, and the defendant's gain of the res by fraud, accident, mistake, undue influence or other wrongful act." U.S. v. Pegg, 782 F.2d 1498, 1500 (9th Cir. 1986). "Under California law, a constructive trust is an equitable remedy, not a substantive claim. In order to establish a constructive trust, the purported beneficiary of the trust must have a substantive right to receive the property." Fourth Investment LP v. U.S., 2010 WL 3069685, *8 (S.D. Cal. Aug. 4, 2010) (citations omitted). Because at least some of Plaintiff's claims will survive defendants' motions to dismiss, it is possible that Plaintiff will establish a substantive right to some property held by defendants. As such, the Court denies Payton's motion as to the constructive trust.

### L. False Promise

A false promise claim is simply a particular species of fraud. See Beckwith v. Dahl, 205 Cal.App.4th 1039, 1060 (2012) (referring to the action as "deceit by false promise" or "fraudulent deceit"); Bernstein v. Vocus, Inc., 2014 WL 3673307, *5 (N.D. Cal. July 23, 2014) referring to the action as "a false promise fraud theory"). As such, the necessary elements include (1) a promise of future performance; (2) made without actual intent to perform; (3) intent to induce reliance; (4) actual reliance; (5) a failure to perform the promised act; and (6) resulting injury. Id. Because a false promise claim is simply a variant of a fraud claim, the heightened pleading standards of Rule 9(b) apply. As previously explained, Plaintiff's complaint fails to satisfy the specificity required of

fraud claims, thus the Court grant's Payton's motion to dismiss as to the false promise claim with leave to amend.

**M. Accounting**

"An accounting cause of action is equitable and may be sought where the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable." Hamilton v. Bank of Blue Valley, 746 F.Supp.2d 1160, 1175 (E.D. Cal. 2010). To plead a claim of accounting, Plaintiff must allege (1) a fiduciary relationship and (2) "an unknown balance due from the Defendants that cannot be ascertained without an accounting." Baker v. Varitalk, Inc., 2008 WL 11319707, *4 (C.D. Cal. Feb. 6, 2008); see also Kritzer v. Lancaster, 96 Cal.App.2d 1, 6-7 (1950). Plaintiff has alleged sufficient facts to plead an accounting. Plaintiff alleges that Payton owed him fiduciary duties as Chief Executive Officer of BT. (Doc. No. 16 ¶ 14.) Similarly, Plaintiff has alleged facts showing there is some unknown balance possibly due to him resulting from complicated transactions involving misappropriation and possible embezzlement. (E.g., Doc. No. 16 ¶¶ 17, 19-21.) Thus, the Court denies Payton's motion to dismiss Plaintiff's accounting claim.

**N. Declaratory Relief – Count 1**

Federal courts have the power to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. This power is discretionary, and courts consider various factors in deciding whether the relief is appropriate. 28 U.S.C. § 2201(a) ("[courts] may declare the rights and other legal relations of any interested party"); MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 136 (2007) ("[we] vest district courts with discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp"); Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1107 (9th Cir. 2011) (listing factors). A cause of action for declaratory relief does not state an independent action, but rather "merely seeks relief." Audette v. Int'l Longshoremen's and Warehousemen's Union, 195 F.3d 1107, 1111 n.2 (9th Cir. 1999).

Plaintiff's first count of declaratory relief is grounded in fraud. Vess, 317 F.3d at 1103-04. Plaintiff alleges that defendants misrepresented that Plaintiff's investment would be used for the benefit of BT and also misrepresented that Baaklini would be compensated for his work on behalf of BT. (Doc. No. 16 ¶¶ 152-53.) As a result, Plaintiff claims he invested $250,000 in BT and recruited Baaklini to develop OnStay. (Id. ¶ 150.) These allegations merely repeat the allegations of Plaintiff's False Promise claim. (Compare id. ¶ 138 with id. ¶¶ 152-53.) As such, the Court finds the heightened pleading standards of Rule 9(b) apply to Plaintiff's first count of declaratory relief—which Plaintiff has not met—and dismisses the claim with leave to amend.

**O. Declaratory Relief – Count 2**

Courts have discretionary power to grant declaratory relief. 28 U.S.C. § 2201(a); MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 136 (2007). In exercising this power, district courts consider various factors including, whether the declaratory judgment will "resolve all aspects of the controversy in a single proceeding" or "serve a useful purpose in clarifying the legal relations at issue." Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1107 (9th Cir. 2011).

The Court declines to exercise jurisdiction over Plaintiff's second claim of declaratory relief. As a threshold matter, Plaintiff's allegations fail to meet even the pleading standards of Rule 8. The entirety of the allegations are set forth in Paragraph 157: "There is an actual controversy between Plaintiff and Defendant SOLUTIONS IQ, INC. regarding whether Defendant SOLUTIONS IQ, INC. purposefully and knowingly, or at a minimum, negligently accepted funds from TIRRELL that were misappropriated, concealed and/or absconded with." (Doc. No. 16 ¶ 157.) This allegation contains nothing more than conclusory remarks, devoid of specific, supporting facts. Iqbal, 556 U.S. at 678. Second, Plaintiff cannot seek a declaratory judgment against Solutions because it has not asserted any valid claim against it. As the Court previously noted, the claims against Solutions are dismissed with leave to amend. Thus, any declaratory relief against Solutions is also dismissed. Audette, 195 F.3d at 1111 n.2 (a cause of action for

declaratory relief does not state an independent action). Finally, the Court declines to entertain declaratory relief against Payton alone. Plaintiff seeks a declaration of the rights to money presumably held by Solutions. Thus declaratory relief against Payton alone would not "resolve all aspects of the controversy" because Plaintiff would still need to sue Solutions to recover. Allstate Ins. Co., 634 F.3d at 1107. Similarly, any declaratory relief against Payton would not "serve a useful purpose in clarifying the legal relations at issue" because the lawfulness of Solution's possession of the money in question is still unknown. Id. Thus the Court grants Payton's motion to dismiss the second count of declaratory relief with leave to amend.

## CONCLUSION

For the foregoing reasons, the Court grants Defendant Solutions IQ, Inc.'s motion to dismiss with leave to amend. (Doc. No. 19.) The Court also grants the Pillsbury Defendants' motion to dismiss with leave to amend. (Doc. No. 20.) Finally, the Court grants, in part, and denies, in part, Defendant Payton's motion to dismiss with leave to amend as previously noted. (Doc. No. 22.) If Plaintiff seeks to amend his complaint to cure the deficiencies noted, Plaintiff must file a new complaint as to all defendants and all claims within 30 days of this order. This second amended complaint will then be the single operative complaint in this matter.

**IT IS SO ORDERED.**

DATED: June 9, 2017

_____
Hon. Marilyn L. Huff
United States District Judge