# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. CHARBEL MAKSOUD,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>BRUCE HOPKINS, et al.,<br><br>　　　　　　　　Defendants. | Case No.: 17-cv-00362-H-WVG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT PHILIPPE GUELTON'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 99] |

On August 17, 2018, Defendant Philippe Guelton ("Defendant Guelton") filed a motion for summary judgment or, in the alternative, partial summary judgment. (Doc. No. 99.) Plaintiff Dr. Charbel Maksoud ("Plaintiff") opposed the motion on September 4, 2018. (Doc. No. 107.) Defendant Guelton replied on September 10, 2018. (Doc. No. 116.) On September 14, 2018, the Court continued the hearing on the motion for summary judgment and set a supplemental briefing schedule in order for the parties to incorporate pending depositions. (Doc. No. 122.) On October 12, 2018, Defendant Guelton filed a supplemental brief in support of his motion for summary judgment. (Doc. No. 124.) On October 26, 2018, Plaintiff filed a supplemental opposition. (Doc. No. 126.) On November 2, 2018, Defendant Guelton filed a supplemental reply. (Doc. No. 131.) The Court held a hearing on the matter on November 9, 2018. Mark Y. Lazo appeared for Plaintiff, Charles D. Ferrari appeared for Defendant Guelton, and Christopher L. Walters appeared

telephonically for Defendant Tirrell Payton. Following the hearing, the Court again reviewed the entire record. For the reasons below, the Court grants in part and denies in part Defendant Guelton's motion for summary judgment.

## BACKGROUND

### I. Factual History

This action presents a stockholder dispute in which Plaintiff alleges that Defendant Guelton and others mislead him into investing in a now-failed start-up. (Doc. No. 35.) Beginning in July 2011, Plaintiff befriended his neighbor, Bruce Hopkins ("Hopkins"). (Doc. 107-9, Maksoud Decl. ¶ 2.) Plaintiff learned that Hopkins and Defendant Tirrell Payton ("Payton") were starting a company, BT Software and Research, Inc. ("BT"). (Id.) Hopkins told Plaintiff that BT was working with Defendant Guelton, a "hugely successful online and media marketing businessman[.]" (Id. ¶ 3.)

In Spring of 2012, Hopkins began inviting Plaintiff to invest in BT. (Id.) Plaintiff states under oath that during this time, he engaged in numerous phone calls with Hopkins, Payton, and Defendant Guelton in which each of them stated that BT had experienced tremendous growth, secured contracts with major automobile manufacturers, and secured funding from other investors. (Id. ¶ 4, 6, 7; Doc. No. 132-1, Maksoud Depo. at 273–79, 302–04.) Plaintiff also testifies that during such phone calls, Defendant Guelton "boasted about his national and international contacts in the online and mass-media marketing areas and related that he had set up numerous meetings in New York with identified strategic partners" and stated that Plaintiff would "substantially benefit as long as [his] investment was made quickly." (Maksoud Decl. ¶ 6, 8; Doc. No. 132-1, Maksoud Depo. at 309–10.) Maksoud specifically states that Defendant Guelton told him that BT had secured contracts with media companies, including Hearst and the New York Times. (Maksoud Decl. ¶ 4; Doc. No. 132-1, Maksoud Depo. at 211, 310–11, 382.)

Beginning in November 2011, Defendant Guelton was an advisor to BT. (Doc. No. 99-2, Guelton Decl. ¶ 2.) Under his Advisor Agreement with BT, Defendant Guelton's duties included: "(i) meeting periodically with the Company's key management for

strategy and goal setting sessions; (ii) introducing the Company to prospective strategic partners (including talent and retailers); (iii) being reasonably available to the Company by telephone and e-mail; (iv) lending Advisor's name when and where appropriate; and (v) attending meetings with prospective and/or existing strategic partners[.]" (Doc. No. 99-4, Exh. A at 2.) In July 2013, Defendant Guelton joined BT's Board of Directors, but retained the same duties he had as an advisor. (Guelton Decl. ¶ 5–6; Doc. No. 99-6, Exh. C at 2.) According to his agreements with BT, for both his roles as advisor and director, Defendant Guelton was to be compensated with shares of BT, not by salary. (Doc. Nos. 99-4, Exh. A at 2; 99-6, Exh. C at 2; 124-4, Payton Depo. at 8–9.) However, Defendant Guelton states that he never received any documentation of his shares in BT. (Guelton Decl. ¶ 22.) Defendant Guelton has submitted a declaration under oath stating that he had no communications with Plaintiff prior to Plaintiff's investment in BT, and that he did not make any representations to Plaintiff regarding BT, his industry knowledge, or his media contacts. (Id. ¶ 8.) Defendant Guelton states that he first learned of Plaintiff's investment from Hopkins via email on May 1, 2014, and that he had no other communications with any party regarding Plaintiff's investment. (Id. ¶ 7; Doc. No. 99-7, Exh. D.)

On May 10, 2014, Plaintiff invested $250,000 in BT to develop a media platform called "Kaliki." (Doc. No. 99-18, Exh. O; Maksoud Depo. at 327–28.) Plaintiff signed an Advisor Agreement with duties identical to those listed in Defendant Guelton's Advisor Agreement. (Doc. No. 99-22, Exh. S.) Plaintiff states that Defendant Guelton, Hopkins, and Payton all represented to him that his investment would be used for operational expenses, research, and development, not for salaries. (Doc. No. 132-1, Maksoud Depo. at 282–83.)

Defendant Guelton states that he was first introduced to Plaintiff in a May 14, 2014 email from Hopkins. (Guelton Decl. ¶ 10; Doc. No. 99-9, Exh. F.) Defendant Guelton states that the first time he spoke to Plaintiff via telephone was June 3, 2014. (Guelton Decl. ¶ 11.) Defendant Guelton states that Plaintiff expressed a desire to help expand BT into France, so Defendant Guelton provided Plaintiff with information of French media contacts. (Id.)

Defendant Guelton maintains that his interaction with Plaintiff was very limited. (Id.) In contrast, Plaintiff states that after he invested, he periodically communicated with Hopkins and Defendant Guelton regarding BT's procurement of new strategic partners and outside investors. (Maksoud Decl. ¶ 12.) Plaintiff further states that after investing in BT, he recruited his now-deceased brother-in-law, Nadeem Baaklini, to develop a software search engage for BT called "OnSay" in exchange for equity in BT. (Doc. No. 35 at 6; Doc. No. 132-1, Maksoud Depo. at 76–77, 184.)

Beginning in November 2015, Plaintiff, Defendant Guelton, and Payton were all unable to contact Hopkins. (Guelton Decl. ¶ 12–18.) In December 2015 and January 2016, through email communications, the parties learned that Hopkins initiated a wire transfer from BT's business account and was involved in legal trouble in Spain related to the death of Hopkins's son. (Id. at ¶ 19; Doc. Nos. 99-24–99-27, Exhs. U–X.) At some point after that BT was forfeited. (Guelton Decl. ¶ 20.) Defendant Guelton states that he was not involved in the forfeiture and does not hold any intellectual property rights relating to BT. (Id. ¶ 20–21.)

After hearing nothing regarding his investment for several months, Plaintiff hired counsel to investigate the veracity of the representations made by Defendant Guelton, Hopkins, and Payton before and after Plaintiff's investment. (Maksoud Decl. at ¶ 13.) Plaintiff states that this investigation shows that there were no other investors, no contracts with major automobile companies, and no relationships with media companies. (Id.) Plaintiff maintains that had Defendant Guelton not made the allegedly false statements and representations to him prior to his investment, he would not have invested in BT. (Id. at ¶ 14.) Defendant Guelton denies that any conversations with Plaintiff occurred prior to his investment and produces phone records showing that he did not call Plaintiff before the investment. (Guelton Decl. ¶ 8; Doc. No. 124-2, Exh. DD.) In contrast, Plaintiff states that he had multiple telephone calls with Defendant Guelton regarding BT. (Maksoud Decl. ¶ 4, 6, 8.)

///

## II. Procedural History

On July 10, 2017, Plaintiff filed his Second Amended Complaint alleging several causes of action against: Defendant Guelton; Tirrell and Susan Payton; Shawn Smith; BT; SheKnows Media; and Momentum Marketing. (Doc. No. 35.) Since then, all defendants have been dismissed except Defendant Guelton, Tirrell Payton, and Susan Payton.[1] (Doc. Nos. 56, 57, 83.) Plaintiff alleges 14 causes of action against Defendant Guelton: (1) intentional misrepresentation, (2) unjust enrichment, (3) restitution, (4) breach of fiduciary duties of care and loyalty, (5) common count (money had and received), (6) intentional interference with prospective economic relations, (7) unfair business practices, (8) negligent interference with prospective economic relations, (9) negligence, (10) constructive trust, (11) aiding and abetting fraud, (12) false promise, (13) accounting, and (14) declaratory relief.[2] (Doc. No. 35.)

## DISCUSSION

### I. Legal Standards

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Fortune Dynamic, 618

---

[1] BT was listed as a Defendant in the Second Amended Complaint and has not been dismissed, however Plaintiff never filed proof of service as to BT, BT has not made an appearance, and Plaintiff has not asked the Court for an extension of time to serve BT. Accordingly, the Court considers Plaintiff's failure to serve BT within the time limits set forth in Federal Rule of Civil Procedure 4(m) and Civil Local Rule 4.1 to mean that Plaintiff is not proceeding against BT.

[2] Plaintiff's causes of action for breach of implied covenant of good faith and fair dealing (Claim 4) and breach of written contract (Claim 13) are only made against BT. (Doc. No. 35 at 10, 22.)

F.3d at 1031 (internal quotation marks and citations omitted); accord Anderson, 477 U.S. at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case that the nonmoving party bears the burden of proving at trial. Id. at 322–23; Jones v. Williams, 791 F.3d 1023, 1030 (9th Cir. 2015). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting former Fed. R. Civ. P. 56(e)); accord Horphag Research Ltd. v. Garcia, 475 F.3d 1029, 1035 (9th Cir. 2007). To carry this burden, the non-moving party "may not rest upon mere allegation or denials of his pleadings." Anderson, 477 U.S. at 256; see also Behrens v. Pelletier, 516 U.S. 299, 309 (1996) ("On summary judgment, . . . the plaintiff can no longer rest on the pleadings."). Rather, the nonmoving party "must present affirmative evidence . . . from which a jury might return a verdict in his favor." Anderson, 477 U.S. at 256. Questions of law are well-suited to disposition via summary judgment. See, e.g., Pulte Home Corp. v. Am. Safety Indem. Co., 264 F. Supp. 3d 1073, 1077 (S.D. Cal. 2017).

When ruling on a summary judgment motion, the Court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). A court should not weigh the evidence or make credibility determinations. See Anderson, 477 U.S. at 255. Further, the Court may consider other materials in the record not cited to by the parties, but it is not required to do so. See Fed. R. Civ. P. 56(c)(3); Simmons v. Navajo Cnty., 609 F.3d 1011, 1017 (9th Cir. 2010).

## II. Analysis

Defendant Guelton seeks summary judgment on all 14 causes of action made against him in Plaintiff's Second Amended Complaint. (Doc. No. 99.) Defendant Guelton argues that: (1) he did not make and had no knowledge of any alleged misrepresentations; (2) he had no authority to and did in fact not participate in, direct, or authorize any wrongdoing by BT; (3) he had no knowledge of any of Plaintiff's prospective economic relations; (4) he did not receive or profit from any portion of Plaintiff's investment; (5) an accounting is unnecessary when a sum can be readily determined and he lacked access to BT's accounting records; and (6) declaratory relief is improper. (Id. at 11–27.) Defendant Guelton also argues that Plaintiff has failed to create genuine issues of material fact because he only relies on uncorroborated, self-serving testimony. (Doc. No. 124 at 5.)

In opposition, Plaintiff argues that there are triable issues of fact with regards to his claims against Defendant Guelton. (Doc. No. 126 at 3.) Plaintiff states that he and Defendant Guelton did speak prior to his investing in BT, and during such conversations Defendant Guelton made misrepresentations in order to induce Plaintiff's investing. (Id.) Plaintiff also argues that Defendant Guelton as a director owed Plaintiff fiduciary duties, and whether those duties were breached is a factual inquiry. (Id. at 6–7.)

The Court concludes that, drawing all inferences in favor of Plaintiff, Scott, 550 U.S. at 378, triable issues of fact remain on Plaintiff's claims for: intentional misrepresentation, aiding and abetting fraud, false promise, unjust enrichment, restitution, constructive trust, breach of fiduciary duties, negligence, unfair business practices, and accounting. Thus, the Court denies summary judgment on those claims. However, the Court grants summary judgment on the claims for common count (money had and received), intentional and negligent interference with prospective economic relations, and declaratory judgment.

### A. Intentional Misrepresentation (Claim 1), Aiding and Abetting Fraud (Claim 12), and False Promise (Claim 14)

Plaintiff's claims for intentional misrepresentation, aiding and abetting fraud, and

7

false promise all arise out of alleged misrepresentations made by Defendant Guelton in order to induce Plaintiff's investment. (Doc. No. 126 at 3.) In a claim for intentional misrepresentation, the plaintiff must show: "(1) a misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) actual and justifiable reliance, and (5) resulting damages." Cisco Systems, Inc. v. STMicroelectronics, Inc., 77 F. Supp. 3d 887, 897 (N.D. Cal. 2014). Plaintiff must specifically indicate the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007).

In a claim for aiding and abetting an intentional tort, "plaintiffs must prove: (1) the fact of perpetration of the overall improper scheme; (2) the aider and abettor's knowledge of such a scheme; and (3) the aider and abettor's substantial assistance furthered the scheme." River Colony Estates Gen. P'ship v. Bayview Fin. Trading Grp., Inc., 287 F. Supp. 2d 1213, 1225 (S.D. Cal. 2003) (citing Harmsen v. Smith, 693 F.2d 932, 943 (9th Cir. 1982)); see Casey v. U.S. Bank Nat. Assn., 127 Cal. App. 4th 1138, 1144 (2005). "Mere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting." Austin B. v. Escondido Union Sch. Dist., 149 Cal. App. 4th 860, 879 (2007) (citing Fiol v. Doellstedt, 50 Cal. App. 4th 1318, 1326 (1996)).

False promise is a particular type of fraud. See Beckwith v. Dahl, 205 Cal. App. 4th 1039, 1060 (2012) (referring to the action as "deceit by false promise" or "fraudulent deceit"); Bernstein v. Vocus, Inc., 2014 WL 3673307, *5 (N.D. Cal. July 23, 2014) referring to the action as "a false promise fraud theory"). In an action for false promise, "one must specifically allege and prove . . . that the promisor did not intend to perform at the time he or she made the promise and that it was intended to deceive or induce the promise to do or not do a particular thing." Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153, 158 (1991).

On all three of these claims, genuine issues of material fact remain. Defendant Guelton maintains that he never personally spoke to Plaintiff prior to Plaintiff's investing. (Doc. No. 99 at 13–14; Guelton Decl. ¶ 8.) To show that the he and Plaintiff never spoke

8

on the phone, Defendant Guelton provides his call logs for the dates on which Plaintiff states that he spoke with Defendant Guelton. (Doc. No. 124-2, Exh. DD.) He also cites to deposition testimony of Payton in which Payton states that no such conversations occurred prior to Plaintiff's investment. (Doc. No. 124-4, Payton Depo. at 11–12.) Defendant Guelton argues that Plaintiff has not created genuine issues of fact because the only evidence that Plaintiff has produced showing that such conversations took place are Plaintiff's declaration and deposition, which are uncorroborated and self-serving. (Doc. No. 124 at 3.) Further, Defendant Guelton argues that Plaintiff's deposition testimony is contradictory to Plaintiff's responses to Defendant Guelton's requests for admissions. (Doc. No. 131 at 4.) There, when asked to admit that Plaintiff did not seek to speak with or otherwise communicate with Defendant Guelton prior to his investing in BT, Plaintiff stated: "Deny, except to the extent that Plaintiff did not meet face to face with [Defendant Guelton] prior to the investment but rather relied upon authorized representations of [his] involvement and role in BT." (Doc. No. 99-19 at 10.)

The Ninth Circuit has "refused to find a 'genuine issue' [as to a material fact] where the only evidence presented is 'uncorroborated and self-serving' testimony." Manley v. Rowley, 847 F.3d 705, 710–11 (9th Cir. 2017) (quoting Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (quotation marks omitted and alterations in original). But, "because a party's own testimony will nearly always be 'self-serving,' the mere self-serving nature of testimony permits a court to discount that testimony where it 'states only conclusions and not facts that would be admissible evidence.'" Id. (quoting Nigro v. Sears, Roebuck and Co., 784 F.3d 495, 497–98 (9th Cir. 2015)). Further, "a court ruling on a motion for summary judgment may not engage in '[c]redibility determinations' or 'the weighing of evidence,' as those are functions reserved for the jury." Id. (quoting Anderson, 477 U.S. at 255) (alterations in original).

Plaintiff's evidence creates genuine issues of material fact. Plaintiff declares under oath that he spoke to Defendant Guelton numerous times before he invested in BT. (Maksoud Decl. ¶ 4; Doc. No. 132-1, Maksoud Depo. at 279, 302–04.) Plaintiff states that

9

during these conversations, Defendant Guelton, Payton, and Hopkins stated that BT had secured major contracts and meetings with automobile manufacturers and media companies. (Maksoud Decl. ¶ 4–5; Doc. No. 132-1, Maksoud Depo. at 228, 309–10, 382.) Plaintiff maintains that these statements induced him to invest in BT. (Maksoud Decl. ¶ 11.) Plaintiff declares that ultimately he found through an investigation that the statements were false. (Id. at 13; Doc. No. 132-1, Maksoud Depo. at 309–11.) Further, Plaintiff's responses to requests for admissions are not directly contradictory to his declaration and deposition testimony. In his response to requests for admissions, Plaintiff denies that the two never spoke prior to his investment, only stating that the two never met face to face. (Doc. No. 99-19 at 10.)

Defendant Guelton argues that Plaintiff's declaration and deposition testimony are different from Plaintiff's discovery responses, but Defendant Guelton has not specifically shown the Court where. It is clear that no face-to-face communications between Defendant Guelton and Plaintiff took place prior to Plaintiff's investment. However, the two provide dramatically different accounts of conversations that lead to Plaintiff's investment. For example, Plaintiff states that the calls were not initiated through his own phone, but rather, he spoke with Defendant Guelton on conference calls, through Hopkins's phone and through alternative call methods, like Skype and Hangout. (Doc. No. 132-1, Maksoud Depo. at 273–82, 313–14.) The Court should not weigh the evidence or make credibility determinations. See Anderson, 477 U.S. at 255. For that reason, the Court denies summary judgment as to Plaintiff's claims for intentional misrepresentation, aiding and abetting fraud, and false promise.

**B.  Unjust Enrichment (Claim 2), Restitution (Claim 3), and Constructive Trust (Claim 11)**

Plaintiff's claims for unjust enrichment, restitution, and constructive trust are all remedies for Guelton's allegedly fraudulent conduct and misuse of Plaintiff's investment. (Doc. No. 126 at 8–9.) "The elements of an unjust enrichment claim are 'the receipt of a benefit and [the] unjust retention of the benefit at the expense of another.'" Peterson v.

10

17-cv-00362-H-WVG

Cellco P'ship, 164 Cal. App. 4th 1583, 1593 (2008). "A person who has been unjustly enriched at the expense of another is required to make restitution to the other. A person is enriched if he receives a benefit at another's expense." Troyk v. Farmers Grp., Inc., 171 Cal. App. 4th 1305, 1339 (2009) (quoting County of Solano v. Vallejo Redevelopment Agency, 75 Cal. App. 4th 1262 (1999)). Thus the elements of a restitution claim are identical to those of an unjust enrichment claim. See Bowler v. Home Depot USA Inc., 2010 WL 3619850, *4 (N.D. Cal. Sept. 13, 2010) ("Restitution is defined by the element of "unjust enrichment").

"[T]hree conditions are necessary for a plaintiff to establish a constructive trust for its benefit: the existence of a res (some property or some interest in property), the plaintiff's right to that rest, and the defendant's gain of the res by fraud, accident, mistake, undue influence or other wrongful act." United States v. Pegg, 782 F.2d 1498, 1500 (9th Cir. 1986). "Under California law, a constructive trust is an equitable remedy, not a substantive claim. In order to establish a constructive trust, the purported beneficiary of the trust must have a substantive right to receive the property." Fourth Investment LP v. United States, 2010 WL 3069685, *8 (S.D. Cal. Aug. 4, 2010) (citing Pegg, 782 F.2d at 1500).

Genuine issues of material fact remain on Plaintiff's equitable claims for unjust enrichment, restitution, and constructive trust. Defendant Guelton argues that he never benefited from the money invested by Plaintiff. (Doc. No. 99 at 24; Guelton Decl. ¶ 22.) Defendant Guelton refers to Plaintiff's deposition in which he states that he has no evidence that distributions from the BT checking were made to Guelton. (Doc. No. 132-1, Maksoud Depo. at 329.) Defendant Guelton also refers to Payton's deposition in which he states that Defendant Guelton received only equity in BT for his work. (Doc. No. 124-4, Payton Depo. at 8–9.) Further, Payton stated that generally he did not share with Defendant Guelton the expenditures of BT. (Id. at 31.) In contrast, Plaintiff states that the money he invested was used by Defendant Guelton and the other defendants for "vacations and other non-business endeavors" and salaries. (Doc. Nos. 126 at 8; 132-1, Maksoud Depo. at 74–76.) Plaintiff also states that Defendant Guelton and Payton authorized Hopkins to withdraw his money

from the BT accounts because withdrawals could only be made with approval of all three directors. (Doc. No. 132-1 at 249–50.) Further, Plaintiff states that because Defendant Guelton was a "director involved in the day-to-day operation of BT," he had access to BT's accounts. (Doc. Nos. 126 at 8; 132-1, Maksoud Depo. at 267–68, 307–08.) Triable issues of fact remain as to whether Defendant Guelton benefited from Plaintiff's investment and had access to BT's accounts. Accordingly, the Court denies summary judgment on Plaintiff's claims for unjust enrichment, restitution, and constructive trust.[3]

### C. Breach of Fiduciary Duties (Claim 5) and Negligence (Claim 10)

Plaintiff's claims for breach of fiduciary duties and negligence both arise from Defendant Guelton's role as a director of BT. (Doc. No. 126 at 6.) "The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach." Mosier v. S. Calif. Physicians Ins. Exch., 63 Cal. App. 4th 1022, 1044 (1998). "It is without dispute that in California, corporate directors owe a fiduciary duty to the corporation and its shareholders and now as set out by statute, must serve 'in good faith, in a manner such director believes to be in the best interests of the corporation and its shareholders.'" Berg & Berg Enterprises, LLC v. Boyle, 178 Cal. App. 4th 1020, 1037 (2009) (citing Cal. Corp. Code § 309(a)). "Directors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position, unless they participate in the wrong or authorize or direct that it be done[.]" PMC, Inc. v. Kadisha, 78 Cal. App. 4th 1368 (2000) (quoting United States Liab. Ins. Co. v. Haidinger-Hayes, Inc., 1 Cal. 3d 586, 595 (1970)). "The breach of fiduciary duty can be based upon either negligence or fraud depending on the circumstances." Ash v. North Am. Title Company, 223 Cal. App. 4th 1258, 1276 (2014).

///

---

[3] Because these claims are equitable in nature, the Court reserves the right to bifurcate the claims and submit them to the Court for determination.

12

Plaintiff's negligence claim also arises from Guelton's duty as a director of BT. To state a cognizable claim for negligence under California law, plaintiff "must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages." Wells Fargo Bank, N.A. v. Renz, 795 F. Supp. 2d 898, 924–25 (N.D.Cal.2011) (citing Ileto v. Glock, Inc., 349 F.3d 1191, 1203 (9th Cir.2003)). California law "requires directors to act in good faith and with the prudence that an ordinary person would under like circumstances. However, [the business judgment rule] also entitles a director to rely on information supplied by others. If directors meet the requirements of the business judgment rule, they are entitled to immunity from personal liability for acts of ordinary negligence under California law." F.D.I.C. v. Castetter, 184 F.3d 1040, 1044 (9th Cir. 1999).

It is undisputed that Defendant Guelton was a director of BT. Defendant Guelton acknowledges that as such, he owed a duty to shareholders—however, he denies any breach of that duty. (Doc. No. 131 at 4.) Defendant Guelton argues that although he was a director, he is free from liability because he did not participate in, direct, or authorize any alleged tort committed by BT or its other directors. (Doc. No. 99 at 17.) Defendant Guelton also argues that the law permitted him as a non-officer director to rely on other BT management without a duty of further inquiry. (Id.) Defendant Guelton further maintains that he only ever acted as an advisor to BT and was given the title of director as a gesture. (Doc. Nos. 124 at 5; 124-4, Payton Depo. at 19.)

However, Plaintiff does not merely state that Defendant Guelton failed to stop the alleged fraud, but rather, Plaintiff maintains that Defendant Guelton directly participated in fraudulently inducing Plaintiff's investment. (Doc. No. 126 at 6–7.) Plaintiff declares under oath that he spoke to Defendant Guelton, Payton, and Hopkins prior to his investment and that all three of them made false representations regarding BT's business prospects in order to induce Plaintiff's investment. (Maksoud Decl. ¶ 4–5; Doc. No. 132-1, Maksoud Depo. at 228, 309–10, 382.) Plaintiff specifies that some of these misrepresentations were with regards to relationships with media companies, which was Defendant Guelton's area of expertise at BT. (Doc. No. 132-1, Maksoud Depo. at 310–11, 382.) Plaintiff also states

13

that Defendant Guelton then profited from the fraudulently induced investment, in breach of his fiduciary duties. (Doc. Nos. 126 at 8; 132-1, Maksoud Depo. at 74–75.) Further, Plaintiff states that Defendant Guelton and Payton authorized Hopkins to withdraw his money from the BT accounts because withdrawals could only be made with approval of all three directors. (Doc. No. 132-1 at 249–50.) Accordingly, genuine issues of material fact remain as to whether Guelton breached any duty owed to Plaintiff arising from his position as director of BT, and the Court denies summary judgment on the claims for breach of fiduciary duties and negligence.

### D. Unfair Business Practices (Bus. & Prof. Code § 17200 et seq.) (Claim 8)

California Business and Professional §§ 17200 et seq., known as the Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising[.]" Cal. Bus. & Prof. Code § 17200. "[A] plaintiff may proceed under the UCL on three possible theories. First, 'unlawful' conduct that violates another law is independently actionable under Section 17200. Alternatively, a plaintiff may plead the defendants' conduct is 'unfair' within the meaning of the several standards developed by the courts. Finally, a plaintiff may challenge 'fraudulent' conduct by showing that 'members of the public are likely to be deceived' by the challenged business acts or practices." Stewart v. Screen Gems-EMI Music, Inc., 81 F. Supp. 3d 938, 967 (N.D. Cal. 2015) (citing In re Tobacco II Cases, 46 Cal. 4th 298, 312 (2009); Daugherty v. Am. Honda Motor Co., Inc., 144 Cal. App. 4th 824, 838 (2006)). "A business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." McKell v. Washington Mut., Inc., 142 Cal. App. 4th 1457, 1473 (2006). Determining whether a practice was unfair "is one of fact which requires a review of the evidence from both parties." Id.

Plaintiff does not specifically identify which section of the UCL Defendant Guelton has allegedly violated. Defendant Guelton argues that this is fatal to Plaintiff's claims, citing to Khoury v. Maly's of California, Inc., 14 Cal. App. 4th 612 (1993). However, the

court in Khoury only required that a plaintiff state with reasonable particularity the facts supporting the statutory elements of a statutory violation. Id. at 619. Here, Plaintiff has created factual disputes that fall within the broad umbrella of the UCL. For example, Plaintiff's claims for intentional misrepresentation and false promise, if successful, would permit a UCL claim under the first or third theories. See Stewart, 81 F. Supp. 3d at 967. Genuine issues of material fact remain on the claims that could give rise to a UCL claim. Further, factual inquiry is necessary to determine whether any actions by Defendant Guelton could be categorized as "unfair" under the second theory. See McKell, 142 Cal. App. 4th at 1473. Accordingly, the Court denies summary judgment on Plaintiff's UCL claim.

### E. Accounting (Claim 15)

In his Second Amended Compliant, Plaintiff alleges a cause of action for an accounting of the uses of his investment. (Doc. No. 35 at 25.) "An accounting cause of action is equitable and may be sought where the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable." Hamilton v. Bank of Blue Valley, 746 F. Supp. 2d 1160, 1175 (E.D. Cal. 2010) (citing Civic Western Corp. v. Zila Industries, Inc., 66 Cal. App. 3d 1, 14 (1977)). To succeed in a claim for accounting, Plaintiff must show (1) a fiduciary relationship and (2) "an unknown balance due from the Defendants that cannot be ascertained without an accounting." Baker v. Varitalk, Inc., 2008 WL 11319707, *4 (C.D. Cal. Feb. 6, 2008); see also Kritzer v. Lancaster, 96 Cal. App. 2d 1, 6–7 (1950).

Defendant Guelton argues that an accounting is unnecessary because the sum owed to Plaintiff is certain, equaling the amount of Plaintiff's investment. (Doc. No. 99 at 25.) Further, Defendant Guelton argues that he never had access to BT's financial accounts and never had possession of Plaintiff's investment. (Doc. Nos. 99 at 17; 124-4, Payton Depo. at 8–9.) Plaintiff does not address the claim for accounting in either his opposition or his supplemental opposition. However, Plaintiff states that Guelton owed him fiduciary duties and had access to BT's financial accounts as a director of BT. (Doc. Nos. 126 at 6; 132-1,

Maksoud Depo. at 308.) Plaintiff has demonstrated genuine dispute of material fact showing that there is some unknown balance possibly due to him resulting from complicated transactions involving alleged misappropriation of his investment by Guelton and the other directors. (Doc. Nos. 126 at 8; 132-1, Maksoud Depo. at 74–75.) Therefore, the Court denies summary judgment on the accounting claim.[4]

### F.  Common Count (Money Had and Received) (Claim 6)

"The common count is a general pleading which seeks recovery of money without specifying the nature of the claim." Title Ins. Co. v. State Bd. of Equalization, 4 Cal. 4th 715, 731 (1992). "A claim for Money Had and Received makes a defendant indebted to a plaintiff for money had and received by the defendant for the use of the plaintiff." Lincoln Nat'l Life Ins. Co. v. McClendon, 230 F. Supp. 3d 1180, 1190 (C.D. Cal. 2017) (citation and internal quotation marks omitted). For a claim of money had and received, a plaintiff must show: "(1) defendant received money; (2) the money defendant received was for plaintiff's use; and (3) defendant is indebted to plaintiff." Id. (citation omitted).

The Court concludes that Plaintiff's claim for money had and received fails because Defendant Guelton did not receive Plaintiff's investment. For example, the court in Lincoln National Life Insurance held that a defendant "received" the plaintiff's money where plaintiff produced checks to defendant's deceased mother endorsed by defendant and defendant admitted that she deposited the checks. Id. at 1191. Here, Defendant Guelton was not the recipient of Defendant Guelton's $250,000 investment. Rather, as shown in Plaintiff's stock purchase agreement with BT, which is signed by Payton as CEO, BT was the recipient of the investment. (Doc. No. 99-18, Ex. O.) In contrast, Plaintiff's claims for unjust enrichment, restitution, and constructive trust require that Plaintiff demonstrate that Defendant Guelton "benefited" or "gained" from Plaintiff's investment. See Pegg, 782 F.2d at 1500; Troyk, 171 Cal. App. 4th at 1339; Peterson, 164 Cal. App. 4th at 1593.

---

[4] As with Plaintiff's claims for unjust enrichment, restitution, and constructive trust, because this claim is equitable in nature, the Court reserves the right to bifurcate this claim and submit it to the Court for determination.

Although Defendant Guelton was not the recipient of Plaintiff's investment, Plaintiff has created genuine issues of material fact as to whether Defendant Guelton benefited from his investment. Accordingly, because Defendant Guelton was not the recipient of Plaintiff's investment, the Court grants Defendant Guelton's motion for summary judgment as to Plaintiff's claim for common count (money had and received).

### G. Intentional and Negligent Interference with Prospective Economic Relations (Claims 7, 9)

Plaintiff has failed to provide any evidence showing that Defendant Guelton intentionally or negligently interfered with Plaintiff's prospective economic relations. The elements of intentional interference with prospective economic relations are: "(1) an economic relationship between the plaintiff and a third party with the probability of future economic benefit to plaintiff, (2) defendant's knowledge of the relationship, (3) intentional wrongful acts by defendant intended to disrupt the relationship, (4) actual disruption, and (5) economic harm to plaintiff." Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1151 (9th Cir. 2008); see Green Hills Software, Inc. v. Safeguard Scientifics and SPC Private Equity Partners, 33 Fed. Appx. 893, 894 (9th Cir. 2002) (citing Della Penna v. Toyota Motor Sales, U.S.A. Inc., 11 Cal. 4th 376, 389 (1995)). Plaintiff must "identify with particularity the relationships or opportunities with which [d]efendant is alleged to have interfered." UMG Recording, Inc. v. Global Eagle Entm't, Inc., 117 F. Supp. 3d 1092, 1118 (C.D. Cal. 2015). "Allegations that a defendant interfered with a relationship with an 'as yet unidentified' customer will not suffice." Id. at 1117 (citing Westside Ctr. Assocs. v. Safeway Stores 23, Inc., 42 Cal. App. 4th 507, 527 (1996)).

Negligent interference with prospective economic relations requires: "(1) an economic relationship existed between the plaintiff and a third party that contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of

the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to the plaintiff in that the relationship was actually interfered with or disrupted and the plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship." N. Am. Chem. Co. v. Superior Court, 59 Cal. App. 4th 764, 69 (1997). Like a claim for intentional interference with prospective economic relations, a claim for negligent interference requires Plaintiff plead with particularity "the relationships or opportunities with which [d]efendant is alleged to have interfered." UMG Recording, 117 F. Supp. 3d at 1118.

Defendant Guelton argues that Plaintiff's claims for intentional and negligent interference with prospective business relations fail because Plaintiff has not proven: that he had an actual relationship with a third party; that Defendant Guelton had knowledge of Plaintiff's prospective economic relations; and that interference with any relationship was caused by Defendant Guelton. (Doc. No. 99 at 20.) In response, Plaintiff states he had opportunities with Facebook, but liquidated his Facebook stock in order to invest in BT. (Doc. No. 132-1, Maksoud Depo. at 69.) Plaintiff testifies that this was motivated by Defendant Guelton's alleged false misrepresentations. (Id. at 70.) However, Plaintiff has failed to show any evidence demonstrating that Defendant Guelton knew of Plaintiff's prospective business relations. In his deposition testimony, Plaintiff states that he "never told anyone about what [he was] doing" with regards to liquidating his Facebook stock. (Doc. No. 132-1, Maksoud Depo. at 68.) He only states that Hopkins "could have easily known that [he] may have to sell [his] Facebook shares[.]" At no point does he state that Defendant Guelton knew about such business opportunities. Plaintiff has failed to produce any affirmative evidence showing that a jury could resolve his claims against Defendant Guelton for intentional and negligent interference in his favor. See Anderson, 477 U.S. at 256. Accordingly, the Court grants Defendant Guelton's motion for summary judgment as to Plaintiff's claims for intentional and negligent interference with prospective economic relations.

///

## H. Declaratory Judgment (Claim 16)

In his Second Amended Complaint, Plaintiff asks the Court for "a judicial determination that he is the exclusive owner of all tangible and intangible rights, including all intellectual property rights and patents in both Kaliki and OnSay" pursuant to 28 U.S.C. § 2201 and California Code of Civil Procedure § 1060. (Doc. No. 35 at 26.) "It is well-established that federal courts sitting in diversity must apply state substantive law and federal procedural rules." Clark v. Allstate Ins. Co., 106 F. Supp. 2d 1016, 1018 (S.D. Cal. 2000) (citing Computer Economics, Inc. v. Gartner Group, Inc., 50 F. Supp. 2d 980, 986 (S.D.Cal.1999)). Therefore, courts sitting in diversity have consistently applied Civil Code of Civil Procedure § 1060 to declaratory judgment claims rather than the Declaratory Judgment Act. See Schwartz v. U.S. Bank, Nat. Ass'n, 2012 WL 10423214, at *15 (C.D. Cal. Aug. 3, 2012) (compiling cases). Thus, the Court applies California law.[5]

"The purpose of a declaratory judgment [under Cal. Code Civ. P. § 1060] is to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation." Meyer v. Sprint Spectrum L.P., 45 Cal. 4th 634, 647 (2009) (quoting Maguire v. Hibernia Savings & Loan, 23 Cal. 2d 719, 729 (1944)). "To qualify for declaratory relief, [a party] would have to demonstrate its action presented two essential elements: '(1) a proper subject of declaratory relief, and (2) an actual controversy involving justiciable questions relating to [the party's] rights or obligations.'" Jolley v. Chase Home Fin., LLC, 213 Cal. App. 4th 872, 909 (2013) (quoting Wilson & Wilson v. City Council of Redwood City, 191 Cal. App. 4th 1559, 1582 (2011)). Declaratory judgment is not used to remedy past wrongs, and therefore "where there is an accrued cause of action for an actual breach of contract or other wrongful act, declaratory relief may be denied." Baldwin v. Marina City Properties, Inc., 79 Cal. App. 3d 393, 407 (1978).

Defendant Guelton argues that Plaintiff has failed to show that an actual controversy exists between Defendant Guelton and Plaintiff regarding the rights to Kaliki or Onsay.

---

[5] The parties do not address which declaratory judgment statute should be applied.

(Doc. No. 99 at 27.) Defendant Guelton argues that since BT's forfeiture, he has not had any further involvement with Kaliki or Onsay and does not own any intellectual property rights to Kaliki or Onsay. (Guelton Decl. ¶ 20–21.) Guelton states that the only intellectual property right he is aware of relating to BT is a trademark of the name "NavAds," which he learned of through an email from Hopkins. (Id. ¶ 20; Doc. No. 99-28, Exh. Y.) Plaintiff does not address his claim for declaratory judgment in either his opposition or his supplemental opposition. Plaintiff has failed to produce any evidence demonstrating that an actual controversy regarding the ownership of BT's property rights exists between himself and Defendant Guelton. Accordingly, the Court grants Defendant Guelton's motion for summary judgment on Plaintiff's claim for declaratory judgment.

## **CONCLUSION**

For the foregoing reasons, the Court denies in part and grants in part Defendant Guelton's motion for summary judgment. Specifically, the Court denies Defendant Guelton's motion for summary judgment as to Plaintiff's claims for: intentional misrepresentation, aiding and abetting fraud, false promise, unjust enrichment, restitution, constructive trust, breach of fiduciary duties, negligence, unfair business practices, and accounting. The Court grants Defendant Guelton's motion for summary judgment as to Plaintiff's claims for: common count (money had and received), intentional interference with prospective economic relations, negligent interference with prospective economic relations, and declaratory judgment.

**IT IS SO ORDERED.**

DATED: November 13, 2018

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT