# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. CHARBEL MAKSOUD,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>BRUCE HOPKINS; et al.,<br><br>　　　　　　　　　Defendants. | Case No.: 3:17-cv-00362-H-WVG<br><br>**ORDER GRANTING SUA SPONTE MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. Nos. 141, 142] |

On December 4, 2018, the Court issued an order sua sponte moving for summary judgment in favor of pro se Defendant Susan Guillory as to all of Plaintiff Charbel Maksoud's claims and as to pro se Defendant Tirrell Payton as to the claims for: (1) intentional interference with prospective economic relations, (2) negligent interference with prospective economics relations, (3) common count (money had and received), and (4) declaratory judgment. (Doc. Nos. 141, 142.) In that order, the Court provided Plaintiff with notice and opportunity to oppose the motion by January 9, 2019. (Doc. No. 141.) Plaintiff did not file any opposition. For the reasons discussed below, the Court grants the sua sponte motion for summary judgment.

## BACKGROUND

This action presents a stockholder dispute in which Plaintiff alleges that Defendants and others mislead him into investing in a now-failed start-up. (Doc. No. 35.) Beginning in July 2011, Plaintiff befriended his neighbor, Bruce Hopkins ("Hopkins"). (Doc. 107-9, Maksoud Decl. ¶ 2.) Plaintiff learned that Hopkins and Defendant Payton were starting a company, BT Software and Research, Inc. ("BT"), in which Defendant Philippe Guelton was involved. (Id. ¶¶ 2–3.) In Spring of 2012, Hopkins began inviting Plaintiff to invest in BT. (Id.) Plaintiff states under oath that during this time, he engaged in numerous phone calls with Hopkins, Defendant Payton, and Defendant Guelton in which each of them stated that BT had experienced tremendous growth, secured contracts with major automobile manufacturers, and secured funding from other investors. (Id. ¶¶ 4, 6, 7; Doc. No. 132-1, Maksoud Depo. at 6–16, 273–79, 302–04.)

Defendant Payton founded BT with Hopkins, and was C.E.O. and on the Board of Directors. (Doc. No. 99-9, Exh. F; Maksoud Depo. at 249–50.) Defendant Payton has stated under oath that he had no communications with Plaintiff prior to Plaintiff's investment in BT, and that he did not make any representations to Plaintiff regarding BT. (Doc. No. 124-4, Payton Depo. at 11–12.) Defendant Payton states that he had not spoken with Plaintiff prior to the winter of 2015. (Id.) Defendant states that negotiations surrounding Plaintiff's investment in BT were strictly between Hopkins and Plaintiff. (Id. at 16.) Further, Defendant Payton states that he did not know of any representations being made to Plaintiff by Hopkins or Defendant Guelton. (Id. at 21.)

On May 10, 2014, Plaintiff invested $250,000 in BT to develop a media platform called "Kaliki" and signed an Advisor Agreement. (Doc. Nos. 99-18, Exh. O; 99-22, Exh. S; Maksoud Depo. at 327–28.) Plaintiff states that Hopkins, Defendant Payton, and Defendant Guelton all represented to him that his investment would be used for operational expenses, research, and development, not for salaries. (Maksoud Depo. at 282–83.) Plaintiff further states that after investing in BT, he recruited his now-deceased brother-in-law, Nadeem Baaklini, to develop a software search engage for BT called "OnSay" in

exchange for equity in BT. (Doc. No. 35 at 6; Maksoud Depo. at 76–77, 184.)

Beginning in November 2015, Plaintiff, Defendant Guelton, and Defendant Payton were all unable to contact Hopkins. (Doc. No. 99-2, Guelton Decl. ¶¶ 12–18.) In December 2015 and January 2016, through email communications, the parties learned that Hopkins initiated a wire transfer from BT's business account and was involved in legal trouble in Spain related to the death of Hopkins's son. (Id. at ¶ 19; Doc. Nos. 99-24–99-27, Exhs. U–X.) At some point after that BT was forfeited. (Guelton Decl. ¶ 20.)

After hearing nothing regarding his investment for several months, Plaintiff hired counsel to investigate the veracity of the representations made by Defendant Guelton, Hopkins, and Defendant Payton before and after Plaintiff's investment. (Maksoud Decl. ¶ 13.) Plaintiff states that this investigation shows that there were no other investors, no contracts with major automobile companies, and no relationships with media companies. (Id.) Plaintiff also states that his investment was used for non-business expenses. (Maksoud Depo. at 74–76.) Plaintiff maintains that had Defendant Payton not made the allegedly-false statements and representations to him prior to his investment, he would not have invested in BT. (Masoud Decl. ¶ 14.)

On July 10, 2017, Plaintiff filed his second amended complaint alleging several causes of action against: Philippe Guelton; Tirrell Payton; Susan Guillory; Shawn Smith; BT; SheKnows Media; and Momentum Marketing. (Doc. No. 35.) Since then, all Defendants have been dismissed except Defendants Guelton, Payton, and Guillory. (Doc. Nos. 56, 57, 83, 141.) In his complaint, Plaintiff alleges 14 causes of action against Defendants Guelton and Payton: (1) intentional misrepresentation, (2) unjust enrichment, (3) restitution, (4) breach of fiduciary duties of care and loyalty, (5) common count (money had and received), (6) intentional interference with prospective economic relations, (7) unfair business practices, (8) negligent interference with prospective economic relations, (9) negligence, (10) constructive trust, (11) aiding and abetting fraud, (12) false promise, (13) accounting, and (14) declaratory relief. (Doc. No. 35.) Plaintiff makes all of the same claims against Defendant Guillory, except for breach of fiduciary duties. (Id.)

On November 13, 2018, the Court granted in part and denied in part Defendant Guelton's motion for summary judgment. (Doc. No. 135.) Specifically, the Court granted summary judgment in favor of Defendant Guelton on Plaintiff's claims for: (1) intentional interference with prospective economic relations, (2) negligent interference with prospective economics relations, (3) common count (money had and received), and (4) declaratory judgment. The Court, believing that its reasoning from that order applied to Plaintiff's claims against Defendant Payton, moved sua sponte for summary judgment in favor of Defendant Payton on such claims. (Doc. No. 141.) In order to narrow the issues in this case to relevant matters, the Court also moved sua sponte for summary judgment in favor of Defendant Guillory because the pleadings thus far had demonstrated that she had no involvement in the alleged violations. (Id.)

## DISCUSSION

### I. Legal Standards

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Fortune Dynamic, 618 F.3d at 1031 (internal quotation marks and citations omitted); accord Anderson, 477 U.S. at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential

element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case that the nonmoving party bears the burden of proving at trial. Id. at 322–23; Jones v. Williams, 791 F.3d 1023, 1030 (9th Cir. 2015). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting former Fed. R. Civ. P. 56(e)); accord Horphag Research Ltd. v. Garcia, 475 F.3d 1029, 1035 (9th Cir. 2007). To carry this burden, the non-moving party "may not rest upon mere allegation or denials of his pleadings." Anderson, 477 U.S. at 256; see also Behrens v. Pelletier, 516 U.S. 299, 309 (1996) ("On summary judgment, . . . the plaintiff can no longer rest on the pleadings."). Rather, the nonmoving party "must present affirmative evidence . . . from which a jury might return a verdict in his favor." Anderson, 477 U.S. at 256. Questions of law are well-suited to disposition via summary judgment. See, e.g., Pulte Home Corp. v. Am. Safety Indem. Co., 264 F. Supp. 3d 1073, 1077 (S.D. Cal. 2017).

When ruling on a summary judgment motion, the Court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). A court should not weigh the evidence or make credibility determinations. See Anderson, 477 U.S. at 255. Further, the Court may consider other materials in the record not cited to by the parties, but it is not required to do so. See Fed. R. Civ. P. 56(c)(3); Simmons v. Navajo Cnty., 609 F.3d 1011, 1017 (9th Cir. 2010).

## II. Claims for Which the Court Granted Summary Judgment in Favor of Defendant Guelton

On November 13, 2018, the Court granted summary judgment in favor of Defendant Guelton on Plaintiff's claims for: (1) common count (money had and received), (2) intentional interference with prospective economic relations, (3) negligent interference with prospective economic relations, and (4) declaratory judgment. (Doc. No. 135.) The Court then moved sua sponte for summary judgment on these claims in favor of Defendants

Payton and Guillory on the basis that the same reasons from its prior order apply to these Defendants. (Doc. Nos. 141, 142.) After providing Plaintiff with opportunity to oppose, the Court concludes that summary judgment in favor of Defendants Payton and Guillory is appropriate on such claims.

### A. Common Count (Money Had and Received)

"The common count is a general pleading which seeks recovery of money without specifying the nature of the claim." Title Ins. Co. v. State Bd. of Equalization, 4 Cal. 4th 715, 731 (1992). "A claim for Money Had and Received makes a defendant indebted to a plaintiff for money had and received by the defendant for the use of the plaintiff." Lincoln Nat'l Life Ins. Co. v. McClendon, 230 F. Supp. 3d 1180, 1190 (C.D. Cal. 2017) (citation and internal quotation marks omitted). For a claim of money had and received, a plaintiff must show: "(1) defendant received money; (2) the money defendant received was for plaintiff's use; and (3) defendant is indebted to plaintiff." Id. (citation omitted).

The Court concludes that Plaintiff's claim for money had and received fails because Defendants Payton and Guillory did not receive Plaintiff's investment. For example, the court in Lincoln National Life Insurance held that a defendant "received" the plaintiff's money where plaintiff produced checks to defendant's deceased mother endorsed by defendant and defendant admitted that she deposited the checks. Id. at 1191. Here, Defendants Payton and Guillory were not the recipients of Defendant Guelton's $250,000 investment. Rather, as shown in Plaintiff's stock purchase agreement with BT, BT was the recipient of the investment. (Doc. No. 99-18, Ex. O.) Accordingly, because Defendants Payton and Guillory were not the recipients of Plaintiff's investment, the Court grants summary judgment in their favor as to Plaintiff's claim for common count (money had and received).

### B. Intentional and Negligent Interference with Prospective Economic Relations

The elements of intentional interference with prospective economic relations are: "(1) an economic relationship between the plaintiff and a third party with the probability

6

3:17-cv-00362-H-WVG

of future economic benefit to plaintiff, (2) defendant's knowledge of the relationship, (3) intentional wrongful acts by defendant intended to disrupt the relationship, (4) actual disruption, and (5) economic harm to plaintiff." Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1151 (9th Cir. 2008); see Green Hills Software, Inc. v. Safeguard Scientifics and SPC Private Equity Partners, 33 Fed. Appx. 893, 894 (9th Cir. 2002) (citing Della Penna v. Toyota Motor Sales, U.S.A. Inc., 11 Cal. 4th 376, 389 (1995)). Plaintiff must "identify with particularity the relationships or opportunities with which [d]efendant is alleged to have interfered." UMG Recording, Inc. v. Global Eagle Entm't, Inc., 117 F. Supp. 3d 1092, 1118 (C.D. Cal. 2015). "Allegations that a defendant interfered with a relationship with an 'as yet unidentified' customer will not suffice." Id. at 1117 (citing Westside Ctr. Assocs. v. Safeway Stores 23, Inc., 42 Cal. App. 4th 507, 527 (1996)).

Negligent interference with prospective economic relations requires: "(1) an economic relationship existed between the plaintiff and a third party that contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to the plaintiff in that the relationship was actually interfered with or disrupted and the plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship." N. Am. Chem. Co. v. Superior Court, 59 Cal. App. 4th 764, 69 (1997). Like a claim for intentional interference with prospective economic relations, a claim for negligent interference requires Plaintiff plead with particularity "the relationships or opportunities with which [d]efendant is alleged to have interfered." UMG Recording, 117 F. Supp. 3d at 1118.

Plaintiff states that he had business opportunities that he had to forgo because he instead invested in BT. However, Plaintiff has failed to show any evidence demonstrating that Defendants Payton and Guillory knew of Plaintiff's prospective business relations. In

his deposition testimony, Plaintiff states that he "never told anyone about what [he was] doing" with regards to liquidating his Facebook stock. (Maksoud Depo. at 68.) He only states that Hopkins "could have easily known that [he] may have to sell [his] Facebook shares[.]" (Id.) At no point does he state that Defendants Payton and Guillory knew about any such business opportunities. Plaintiff has failed to produce any affirmative evidence showing that a jury could resolve his claims against Defendants Payton and Guillory for intentional and negligent interference in his favor. See Anderson, 477 U.S. at 256. Accordingly, the Court grants summary judgment in favor of Defendants Payton and Guillory as to Plaintiff's claims for intentional and negligent interference with prospective economic relations.

### C. Declaratory Judgment

In his second amended complaint, Plaintiff asks the Court for "a judicial determination that he is the exclusive owner of all tangible and intangible rights, including all intellectual property rights and patents in both Kaliki and OnSay" pursuant to 28 U.S.C. § 2201 and California Code of Civil Procedure § 1060. (Doc. No. 35 at 26.) "It is well-established that federal courts sitting in diversity must apply state substantive law and federal procedural rules." Clark v. Allstate Ins. Co., 106 F. Supp. 2d 1016, 1018 (S.D. Cal. 2000) (citing Computer Economics, Inc. v. Gartner Group, Inc., 50 F. Supp. 2d 980, 986 (S.D.Cal.1999)). Therefore, courts sitting in diversity have consistently applied Civil Code of Civil Procedure § 1060 to declaratory judgment claims rather than the Declaratory Judgment Act. See Schwartz v. U.S. Bank, Nat. Ass'n, 2012 WL 10423214, at *15 (C.D. Cal. Aug. 3, 2012) (compiling cases). Thus, the Court applies California law.

"The purpose of a declaratory judgment [under Cal. Code Civ. P. § 1060] is to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation." Meyer v. Sprint Spectrum L.P., 45 Cal. 4th 634, 647 (2009) (quoting Maguire v. Hibernia Savings & Loan, 23 Cal. 2d 719, 729 (1944)). "To qualify for declaratory relief, [a party] would have to demonstrate its action presented two essential elements: '(1) a proper subject of declaratory relief, and (2) an actual controversy involving justiciable questions relating to

[the party's] rights or obligations.'" Jolley v. Chase Home Fin., LLC, 213 Cal. App. 4th 872, 909 (2013) (quoting Wilson & Wilson v. City Council of Redwood City, 191 Cal. App. 4th 1559, 1582 (2011)). Declaratory judgment is not used to remedy past wrongs, and therefore "where there is an accrued cause of action for an actual breach of contract or other wrongful act, declaratory relief may be denied." Baldwin v. Marina City Properties, Inc., 79 Cal. App. 3d 393, 407 (1978).

Plaintiff has failed to show that an actual controversy exists between Defendants Payton and Guillory and Plaintiff regarding the rights to Kaliki or Onsay. Plaintiff has not produced any evidence showing that Defendants Payton and Guillory have any right in Kaliki, Onsay, or any other assets of BT. Defendant Guelton stated that the only intellectual property right he is aware of relating to BT is a trademark of the name "NavAds." (Guelton Decl. ¶ 20; Doc. No. 99-28, Exh. Y.) Plaintiff has not produced any evidence showing that BT owned any other intellectual property at the time of dissolution. Further, Plaintiff goes as far as to state that has had no reason to believe that Defendant Payton improperly used or took any of BT's assets upon dissolution. (Maksoud Depo. at 265.) Because Plaintiff has failed to produce any evidence demonstrating that an actual controversy regarding the ownership of BT's property rights exists between himself and Defendants Payton and Guillory, the Court grants summary judgment in favor of Defendants Payton and Guillory the declaratory judgment claim.

### III. Remaining Claims Against Defendant Guillory

The Court also moved sua sponte for summary judgment in favor of Defendant Guillory on Plaintiff's remaining claims because the pleadings show that she had no involvement with the alleged violations. (Doc. Nos. 141 at 2; 142.) The Court believes that Defendant Guillory was named in this lawsuit merely by virtue of being married to Defendant Payton at the time of the facts alleged in this case. The pleadings do not indicate that she had any involvement in the creation of BT, the solicitation of Plaintiff's investment, or the subsequent activities and failure of BT. After providing Plaintiff with opportunity to oppose the sua sponte motion, the Court concludes that summary judgment

in favor of Defendant Guillory is appropriate with respect to all remaining claims made against her, in addition to those discussed above.

### A. Intentional Misrepresentation, Aiding and Abetting Fraud, and False Promise

In a claim for intentional misrepresentation, the plaintiff must show: "(1) a misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) actual and justifiable reliance, and (5) resulting damages." Cisco Systems, Inc. v. STMicroelectronics, Inc., 77 F. Supp. 3d 887, 897 (N.D. Cal. 2014). Plaintiff must specifically indicate the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007).

In a claim for aiding and abetting an intentional tort, "plaintiffs must prove: (1) the fact of perpetration of the overall improper scheme; (2) the aider and abettor's knowledge of such a scheme; and (3) the aider and abettor's substantial assistance furthered the scheme." River Colony Estates Gen. P'ship v. Bayview Fin. Trading Grp., Inc., 287 F. Supp. 2d 1213, 1225 (S.D. Cal. 2003) (citing Harmsen v. Smith, 693 F.2d 932, 943 (9th Cir. 1982)); see Casey v. U.S. Bank Nat. Assn., 127 Cal. App. 4th 1138, 1144 (2005). "Mere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting." Austin B. v. Escondido Union Sch. Dist., 149 Cal. App. 4th 860, 879 (2007) (citing Fiol v. Doellstedt, 50 Cal. App. 4th 1318, 1326 (1996)).

False promise is a particular type of fraud. See Beckwith v. Dahl, 205 Cal. App. 4th 1039, 1060 (2012) (referring to the action as "deceit by false promise" or "fraudulent deceit"); Bernstein v. Vocus, Inc., 2014 WL 3673307, *5 (N.D. Cal. July 23, 2014) referring to the action as "a false promise fraud theory"). In an action for false promise, "one must specifically allege and prove . . . that the promisor did not intend to perform at the time he or she made the promise and that it was intended to deceive or induce the promise to do or not do a particular thing." Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153, 158 (1991).

///

Here, Plaintiff has failed to show any misrepresentation or fraud by Defendant Guillory. Plaintiff alleges that misrepresentations by Hopkins, Defendant Payton, and Defendant Guelton induced him to invest in BT. (Maksoud Depo. at 6–16, 273–79, 302–04.) At no point does Plaintiff state that Defendant Guillory made any representations to him regarding BT. Even further, Plaintiff never states that he interacted with Defendant Guillory at all or that she had any involvement in BT. Accordingly, the Court grants Defendant Guillory summary judgment as to Plaintiff's claims for intentional misrepresentation, aiding and abetting fraud, and false promise.

### B. Unjust Enrichment, Restitution, and Constructive Trust

"The elements of an unjust enrichment claim are 'the receipt of a benefit and [the] unjust retention of the benefit at the expense of another.'" Peterson v. Cellco P'ship, 164 Cal. App. 4th 1583, 1593 (2008). "A person who has been unjustly enriched at the expense of another is required to make restitution to the other. A person is enriched if he receives a benefit at another's expense." Troyk v. Farmers Grp., Inc., 171 Cal. App. 4th 1305, 1339 (2009) (quoting County of Solano v. Vallejo Redevelopment Agency, 75 Cal. App. 4th 1262 (1999)). Thus the elements of a restitution claim are identical to those of an unjust enrichment claim. See Bowler v. Home Depot USA Inc., 2010 WL 3619850, *4 (N.D. Cal. Sept. 13, 2010) ("Restitution is defined by the element of "unjust enrichment").

"[T]hree conditions are necessary for a plaintiff to establish a constructive trust for its benefit: the existence of a res (some property or some interest in property), the plaintiff's right to that rest, and the defendant's gain of the res by fraud, accident, mistake, undue influence or other wrongful act." United States v. Pegg, 782 F.2d 1498, 1500 (9th Cir. 1986). "Under California law, a constructive trust is an equitable remedy, not a substantive claim. In order to establish a constructive trust, the purported beneficiary of the trust must have a substantive right to receive the property." Fourth Investment LP v. United States, 2010 WL 3069685, *8 (S.D. Cal. Aug. 4, 2010) (citing Pegg, 782 F.2d at 1500).

Plaintiff has not shown that Defendant Guillory received or benefitted from any part his investment in BT. Plaintiff states that the money he invested was used by Defendants,

for "vacations and other non-business endeavors" and salaries. (Maksoud Depo. at 74–76.) Plaintiff states that Defendants Payton and Guelton had access to Plaintiff's investment by way of their positions in BT. In contrast, Plaintiff does not show any way in which Defendant Guillory had access to or received Plaintiff's investment. Rather, his claim relies solely on Defendant Guillory's status as Defendant Payton's then-wife. Plaintiff has failed to produce any affirmative evidence showing that a trier of fact could resolve his claims against Defendant Guillory for unjust enrichment, restitution, and constructive trust in his favor. See Anderson, 477 U.S. at 256. Thus, the Court grants Defendant Guillory summary judgment with respect to Plaintiff's claims for unjust enrichment, restitution, and constructive trust.

### C. Negligence, Accounting, and Violation of UCL

To state a cognizable claim for negligence under California law, plaintiff "must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages." Wells Fargo Bank, N.A. v. Renz, 795 F. Supp. 2d 898, 924–25 (N.D. Cal. 2011) (citing Ileto v. Glock, Inc., 349 F.3d 1191, 1203 (9th Cir.2003)). California law "requires directors to act in good faith and with the prudence that an ordinary person would under like circumstances. However, [the business judgment rule] also entitles a director to rely on information supplied by others. If directors meet the requirements of the business judgment rule, they are entitled to immunity from personal liability for acts of ordinary negligence under California law." F.D.I.C. v. Castetter, 184 F.3d 1040, 1044 (9th Cir. 1999).

"An accounting cause of action is equitable and may be sought where the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable." Hamilton v. Bank of Blue Valley, 746 F. Supp. 2d 1160, 1175 (E.D. Cal. 2010) (citing Civic Western Corp. v. Zila Industries, Inc., 66 Cal. App. 3d 1, 14 (1977)). To succeed in a claim for accounting, Plaintiff must show (1) a fiduciary relationship and (2) "an unknown balance due from the Defendants that cannot be ascertained without an accounting." Baker v. Varitalk, Inc., 2008 WL 11319707, *4 (C.D. Cal. Feb. 6, 2008); see also Kritzer v. Lancaster, 96 Cal. App. 2d 1, 6–7 (1950).

California Business and Professional §§ 17200 et seq., known as the Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising[.]" Cal. Bus. & Prof. Code § 17200. "[A] plaintiff may proceed under the UCL on three possible theories. First, 'unlawful' conduct that violates another law is independently actionable under Section 17200. Alternatively, a plaintiff may plead the defendants' conduct is 'unfair' within the meaning of the several standards developed by the courts. Finally, a plaintiff may challenge 'fraudulent' conduct by showing that 'members of the public are likely to be deceived' by the challenged business acts or practices." Stewart v. Screen Gems-EMI Music, Inc., 81 F. Supp. 3d 938, 967 (N.D. Cal. 2015) (citing In re Tobacco II Cases, 46 Cal. 4th 298, 312 (2009); Daugherty v. Am. Honda Motor Co., Inc., 144 Cal. App. 4th 824, 838 (2006)). "A business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." McKell v. Washington Mut., Inc., 142 Cal. App. 4th 1457, 1473 (2006). Determining whether a practice was unfair "is one of fact which requires a review of the evidence from both parties." Id.

Plaintiff's negligence, accounting, and UCL claims all arise from Defendant Guelton's and Defendant Payton's duties as a directors of BT. Negligence requires that a defendant owe some duty to the plaintiff. Wells Fargo, 795 F. Supp. 2d at 924–25. A claim for accounting requires a fiduciary relationship between plaintiff and defendant. Baker, 2008 WL 11319707, *4. A violation under the UCL requires that a defendant engage in some unfair business act or practice. Cal. Bus. & Prof. Code § 17200. Accordingly, such claims fail as to Defendant Guillory because she had no role whatsoever in BT, and therefore did not owe Plaintiff a duty, did not have a fiduciary relationship with Plaintiff, and was not engaged in any business practice. Accordingly, the Court grants summary judgment in favor of Defendant Guillory on Plaintiff's claims for negligence, accounting, and UCL violations.

///

## CONCLUSION

For the foregoing reasons, the Court grants its sua sponte motion for summary judgment. Specifically, the Court grants summary judgment in favor of Defendant Susan Guillory on all of Plaintiff's claims. The Court grants summary judgment in favor of Defendant Tirrell Payton on Plaintiff's claims for: (1) intentional interference with prospective economic relations, (2) negligent interference with prospective economics relations, (3) common count (money had and received), and (4) declaratory judgment. Accordingly, the only claims remaining in this case are against Defendants Philippe Guelton and Tirrell Payton for: (1) intentional misrepresentation, (2) aiding and abetting fraud, (3) false promise, (4) unjust enrichment, (5) restitution, (6) constructive trust, (7) breach of fiduciary duties, (8) negligence, (9) unfair business practices, and (10) accounting.

**IT IS SO ORDERED.**

DATED: February 1, 2019

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT