UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. CHARBEL MAKSOUD,<br><br>Plaintiff,<br><br>v.<br><br>HOPKINS *et al.*,<br><br>Defendants. | Case No.: 17-CV-362-H(WVG)<br><br>**REPORT AND RECOMMENDATION RE: SUMMARILY ENFORCING SETTLEMENT AGREEMENT AND ENTERING JUDGMENT** |

Having reached agreement to settle this case and placed the material terms on the record before this Court, Defendant Guelton thereafter purportedly remembered he had signed a release agreement that critically relates to one of those settlement terms. This release agreement was previously undisclosed to Plaintiff. Guelton now declines to sign a written settlement agreement with the original terms he agreed to on the record unless an additional term is included that requires Plaintiff to indemnify him in the event he is sued for breach of the recently-disclosed release agreement down the road. In the alternative, Guelton wishes to set aside the settlement and proceed to trial. For his part, Plaintiff wishes to have the original terms enforced without an indemnity provision that he never agreed to. Accordingly, the Court must now determine whether to enforce the original settlement terms placed on the record without any additional terms and accordingly enter judgment in

this case; whether to enforce the original settlement terms but include Guelton's additional indemnity term; or whether to set aside the settlement *in toto* and proceed to trial. After careful consideration, this Court RECOMMENDS the first option: that the original terms placed on the record be enforced without any indemnification provision, final judgment be entered, and the case be closed.

## I. BACKGROUND

The tortured history of the settlement at issue is not surprising given the broader history of this contentious case. For purposes of this R&R, however, the Court picks up that history only with the most recent settlement proceedings that began in March of this year.

The Court convened an in-person Mandatory Settlement Conference on March 25, 2019, but settlement was not reached that day. (Doc. No. 155.) However, the parties[1] were amenable to another settlement conference after exchanging some additional information and documentation. Specifically, Guelton had agreed to provide Plaintiff any information that could help Plaintiff determine the value of a proposed assignment of Guelton's legal claims against insurance carriers had—if any claims even existed. (Tr. (Apr. 10, 2019),[2] Doc. No. 182 at 6:7-7:7.) The Court set the next settlement conference for March 28, 2019. (Doc. No. 156.)

---

[1] Including Defendant Tirrell Payton, who is not involved in the present dispute.

[2] The transcript cited in this, and the next, paragraph is from the April 10, 2019 teleconference the Court convened after the Maksoud-Guelton settlement was memorialized on April 2, 2019 and the present dispute thereafter arose. The Court here cites this later-in-time conference because transcripts do not exist for the two settlement conferences held on March 25 and 28, 2019—the Court ordinarily does not place confidential settlement discussions on the record. During the April 10, 2019 teleconference, the Court briefly explained some of the history of settlement discussions to a defense attorney who was not present at the March 25, 2019 in-person settlement conference.

When attorneys Lazo and Adli and their respective clients participated in the March 28, 2019 telephonic settlement conference, it came to light that the parties had not communicated *at all* since the original Mandatory Settlement Conference as they had agreed to do. (Tr. (Apr. 10, 2019), Doc. No. 182 at 6:21-7:16) Moreover, Guelton had not provided *any* documents or information to Plaintiff which would allow Plaintiff to determine the value of any assignable claims. (*Id.*) In light of the parties' complete failure of action and communication, the Court concluded the settlement conference and advised the parties to contact the Court if they needed further assistance after they had engaged in further settlement efforts.

Then, on April 2, 2019, with trial scheduled for April 18, 2019, the parties reached a settlement of this case. On that date, this Court convened a teleconference with the parties and their counsel to memorialize the terms of the settlement on the record. (*See generally* Tr. (Apr. 2, 2019), Doc. No. 183 at 2-11.)[3] Attorney Marc Lazo appeared for Plaintiff Maksoud, who also participated in the teleconference. (*Id.* at 2.) Attorney Dariush Adli appeared for Defendant Guelton, who also participated. (*Id.*) Lazo recited the terms of the settlement, and all parties and counsel confirmed on the record that his recitation was accurate. (*Id.* at 7-9.) The following were the essential terms of the settlement that Lazo recited:

1. A lump sum payment of $17,500 to Maksoud by Guelton within 10 days of execution of the settlement agreement.

2. Guelton would execute a written assignment of rights to Maksoud, assigning "rights to prosecute any and all claims against any and all insurance companies who could potentially have afforded coverage for Mr. Guelton's defense in this case." This assignment would be "incorporated into the settlement agreement."

3. A waiver of attorneys' fees and costs by both Maksoud and Guelton.

---

[3] This transcript also contains the terms of the settlement between Plaintiff and Defendant Tirrell Payton.

(*Id.* at 8.) The parties also agreed to "execute any additional documentation necessary to consummate the settlement." (*Id.*) After confirming that the above terms were accurate, both Maksoud and Guelton stated they understood the terms and agreed to be bound by these terms. (*Id.* at 9.)

Having memorialized the essential terms of the settlement, this Court then set a schedule for exchanging drafts of the settlement agreement, its execution, payment, and a deadline for filing a joint motion to dismiss. (*Id.* at 9-10.) Because the parties had resolved the case, the Court vacated the trial date and reminded the parties of their obligation to comply with this Court's Order setting the schedule for completing the settlement process. (Doc. No. 169.)

The Court became aware of a problem with the settlement on or about April 9, 2019 and held a status conference on April 10, 2019. (Doc. Nos. 170 & 171.) Attorneys Lazo, Adli, and Ferrari participated on behalf of their respective clients. Lazo revealed that after the parties exchanged drafts of the settlement agreement, Defendant Guelton produced to Plaintiff a release agreement that had not been discussed or disclosed ever before.[4] (Doc. No. 182 at 2-3.) Executed by Guelton, this document was a release of all claims that Guelton may have held against his former employer and former defendant in this case, SheKnows Media. (*Id.*) The release further covered any bad faith claims that SheKnows may have had against its insurers. (Doc. No. 178-1 at 35.) Adli explained that he had not been aware that the release agreement existed until after he sent the written settlement agreement to Guelton for his review. (Doc. No. 182 at 3-4.)[5] It was only then that Guelton

---

[4] This release agreement is available for Court's review as an attachment to the document discrepancy notice that is discussed below. (Doc. No. 178-1 at 35-39 (document designated "Court only" by the Clerk of Court).)

[5] Interestingly, Adli advised the Court, Lazo, and Plaintiff during the March 28 telephonic settlement conference that all pertinent documents related to Guelton's release had been provided to Plaintiff in Guelton's Rule 26 initial disclosures many months earlier and it was for that reason that Adli felt there was no need for further communication with Lazo

4

17-CV-362-H(WVG)

informed Adli that he had found the release agreement, which Guelton claims was one of several documents he had signed upon leaving SheKnows's employment and had apparently forgotten about. (*Id.*)

After the release agreement came to light, Guelton requested that the settlement include a term whereby Plaintiff would indemnify Guelton in the event he is ever sued for breach of the SheKnows release agreement. (*Id.* at 3:6-12.) Plaintiff rejected this request and demanded that the settlement be upheld without any indemnity requirement. (*Id.* at 4-5.) Plaintiff wished to proceed with the settlement that was placed on the record notwithstanding the existence of the release agreement. (*Id.* at 4:15-21, 5:5) The Court suggested Plaintiff could file a motion to enforce the settlement and granted him leave to do so. (Doc. No. 182 at 9:24-25.) The Court accordingly directed the parties to further meet and confer about the settlement dispute and also agreed to accept a motion to enforce the settlement if the meet and confer efforts did not resolve the dispute. (*Id.* at 18:19-19:16; Doc. No. 172 at ¶ 1-3.) Accordingly, the Court issued a formal briefing schedule, requiring meet and confer efforts and setting a hearing date for a possible forthcoming motion. (Doc. No. 172.) If the meet and confer efforts were fruitless, Plaintiff was to file his motion no later than April 23, 2019, Guelton's opposition would have been due on May 1, 2019, and the "in-person" hearing would be held on May 31, 2019. (*Id.* at ¶ 3(a)-(d).)

The deadline for filing a motion came and went without a motion being filed by Plaintiff or any further communication from the parties. However, after the deadline expired, the Court became aware that Plaintiff wished to file an untimely motion and convened a telephonic status conference, at which attorneys Lazo and Ferrari appeared to discuss the matter. (Tr. (Apr. 29, 2019), Doc. No. 180.) On that conference, the Court

---

on this issue after the March 25 in-person settlement conference. But even if Adli was correct, it was incumbent upon him to at least advise Lazo where to look for the relevant documents. Of course, we now know the SheKnows release agreement was not among the initial disclosures as Adli now must admit. (*See* Tr. (Apr. 10, 2019), Doc. No. 182 at 7:13-16.)

expressly denied Plaintiff leave to file the untimely motion but stated that the May 31 hearing would remain on calendar to allow the parties to appear and argue as they wished. Nonetheless, despite the Court's multiple and clear denials of leave, Plaintiff filed the motion anyway on May 3, 2019. (Doc. No. 177.) However, the Court declined to accept the untimely motion and struck it from the docket. (Doc. No. 178; *see also* Tr. (Apr. 29, 2019), Doc. No. 180 at 12:8-11.)[6]

On May 31, 2019, as scheduled, the Court convened a hearing to allow the parties to be heard. Attorney Ferrari appeared for Guelton. However, despite the clear language in the Order setting the hearing and the Court's multiple references to the hearing being in person, Plaintiff's counsel failed to appear. (Doc. No. 172 at 2 ("If a motion is filed, an *in-person* attorneys-only hearing will be held before the undersigned on May 31, 2019 at 9:00 a.m. in Courtroom 2B of the Edward J. Schwartz United States Courthouse.") (emphasis added); Tr. (Apr. 10, 2019), Doc. No. 182 at 20 ("We'll do that *in person*, *in court*, on the record. May 31st, 9 a.m. for the hearing.") (emphasis added); Tr. (Apr. 29, 2019), Doc. No. 180 at 5 ("*You can come in* and argue on May 31st.") (emphasis added), 6-7 (*You all can come in* on . . . May 31st. You can argue.") (emphasis added), 7 ("Well, *I'll let you come in* and argue. *I'll let you come in* and make an argument.") (emphasis added).)[7] The Court memorialized the purpose of that day's hearing and granted attorney Ferrari an opportunity to briefly speak, though the Court cautioned that it did not wish to turn the proceedings into an *ex parte* hearing given Plaintiff's failure to appear. The Court terminated the proceedings once Ferrari began to substantively argue that the settlement should be set aside in part due to a mistake of fact. (Doc. No. 181 at 5.) The Court

---

[6] Although the motion was stricken from the docket, it remains available for review by the Court as an attachment to the Order striking it. (Doc. No. 178-1 (document designated "Court only" by the Clerk of Court).)

[7] Although a motion was not timely filed, this Court made clear that an in-person hearing would nonetheless proceed as scheduled.

concluded the hearing and continued to ponder how to proceed in this case resulting in the instant *sua sponte* Report and Recommendation.

## II. LEGAL STANDARD

A district court retains the inherent power to summarily enforce settlement agreements entered into by the parties in cases pending before it. *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994); *Marks-Foreman v. Reporter Publ'g Co.*, 12 F. Supp. 2d 1089, 1092 (S.D. Cal. 1998). This inherent authority applies to settlement agreements entered on the record but later reneged on by one party. *See Henderson v. Yard House Glendale*, LLC, 456 F. App'x 701, 702 (9th Cir. 2011) ("The district court did not abuse its discretion in enforcing the settlement agreement after [Plaintiff] entered into it on the record in open court, but later refused to execute a formal agreement to dismiss the action. . . ."); *Ewing v. K2 Prop. Dev., LLC*, No. 16CV678-LAB(AGS), 2018 U.S. Dist. LEXIS 172810, at *6 (S.D. Cal. Oct. 4, 2018).

To enforce a settlement agreement, two elements must be satisfied. *Marks-Foreman*, 12 F. Supp. 2d at 1092. First, the settlement agreement must be complete. *Id.* (citing *Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir. 1994); *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1137 (9th Cir. 2002). Second, the settlement agreement must be the result of an agreement of the parties or their authorized representatives concerning the terms of the settlement. *Marks-Foreman*, 12 F. Supp. 2d at 1092 (citing *Harrop v. Western Airlines*, Inc., 550 F.2d 1143, 1144-45 (9th Cir. 1977), *Doi*, 276 F.3d at 1137-38). Where parties raise objections after the parties agree to a settlement, the court may rightfully deny such objections. *Harrop*, 550 F.2d at 1144.

"Assessing the validity of a settlement agreement . . . is a question of state contract law." *Golden v. Cal. Emergency Physicians Med. Grp.*, 782 F.3d 1083, 1087 (9th Cir. 2015) ("Typically, the construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." (internal quotation marks and citation omitted)). Under California law, a valid contract requires parties capable of contracting, consent, a lawful object, and consideration. Cal.

Civ. Code § 1550; *Lopez v. Charles Schwab & Co., Inc.*, 118 Cal. App. 4th 1224, 1230 (Cal. Ct. App. 2004). "[U]nless a writing is required by the statute of frauds, oral settlement agreements are enforceable in the same manner as oral agreements in general."[8] *Nicholson v. Barab*, 233 Cal. App. 3d 1671, 1681 (Cal. Ct. App. 1991); *see id.* at 1682 (listing California cases in which out-of-court oral settlement agreements were found to be enforceable).

### III. DISCUSSION

The question before this Court is whether the Court should enforce the original settlement terms placed on the record without any additional terms and accordingly enter judgment in this case, enforce the original settlement terms but include Guelton's additional indemnity term, or set aside the settlement *in toto* and proceed to trial. After careful consideration, this Court RECOMMENDS the first option: that the original terms placed on the record be enforced without any indemnification provision.

**A.  The Terms of the April 2, 2019 Settlement on the Record Should Be Enforced and Judgment Should be Entered**

The key issues at play here include whether there was a meeting of the minds as to the terms placed on the record before the Court, whether the settlement is complete, and whether—as Guelton seems to contend—there was a mistake of fact that allows him to void the agreement. As explained below, the settlement agreement was complete and there was a meeting of the minds when the essential terms were placed on the record before this Court. Moreover, there was no mistake of fact. Assuming, for the sake of argument, that there was a mistake, any risk should be allocated to Guelton alone. Judgment should therefore be entered based on the terms placed on the record on April 2, 2019.

---

[8] Here, California's statute of frauds, California Civil Code section 1624, is not applicable because the alleged oral agreement is not one of the seven types of contracts listed in section 1624 as "invalid" without a writing. Thus, the oral agreement on the record is enforceable without a writing.

The Court now addresses each of the elements of a binding contract under California Civil Code section 1550, which requires a valid contract to have parties capable of contracting, consent, a lawful object, and consideration.

### 1. Parties Capable of Contracting

Pursuant to California Civil Code section 1556, all persons are capable of contracting "except minors, persons of unsound mind, and persons deprived of civil rights." None of these exceptions applies here.

### 2. Mutual Assent

"Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 173 (Cal. Ct. App. 2015) (citations and internal quotations omitted).

Applying this objective standard, the Court finds the parties mutually manifested assent to settle this case on the terms put on the record before this Court. On April 2, 2019, Plaintiff, Guelton, and their attorneys participated on a teleconference before this Court. (Doc. No. 183 at 2.) Plaintiff's counsel recited the following essential terms of their agreement:

> Dr. Maksoud will dismiss all claims with prejudice against Mr. Guelton, including a Civil Code Section 1544 waiver, in exchange for the following two items of consideration:
>
> The first being payment of $17,500 in one lump sum, readily available funds, within 10 days of full execution of the settlement agreement, and a written assignment of rights to prosecute any and all claims against any and all insurance companies who could potentially have afforded coverage for Mr. Guelton's defense in this case, which assignment will be incorporated into the settlement agreement.
>
> . . . .
>
> Both parties waive attorneys' fees and costs and will agree to execute any

additional documentation necessary to consummate the settlement.
(*Id.* at 7-8.) Defense counsel confirmed that Plaintiff's counsel had accurately recited the essential terms. (*Id.* at 8.) Both parties stated they understood these terms. (*Id.* at 9.) Both parties then agreed to be bound by the terms. (*Id.*)

Because the parties expressed their mutual assent before this Court and on the record, there is no doubt they each expressly manifested their assent to settle this case and that the above terms were the essential and material terms to which both parties assented.

### i. No Mutual Assent to Guelton's Additional Indemnification Term

One possible option in resolving this dispute is to enforce the original settlement terms but also include Guelton's additional term that would require Plaintiff to indemnify him if Guelton is sued for breach of the SheKnows release agreement. Plaintiff strenuously opposes this additional term.

The notion that Guelton's indemnity provision could be included as part of any settlement here is ludicrous for the simple reason that there is clearly no mutual assent to that term. It was never contemplated by the parties that Plaintiff would indemnify Guelton in the event he is sued because the existence of the release agreement was never revealed until after the parties engaged in settlement talks, placed the terms of the settlement on the record, and drafted the written settlement agreement. And if there could be any doubt that Plaintiff does not assent to this term, Plaintiff's counsel stated as much when the Court convened a conference to discuss this dispute after it arose:

> [I]f Mr. Guelton is not willing to accept the terms as is, in other words he assigns us the rights and we go after those rights, you know, without any qualification, without any agreement on our part to indemnify him if SheKnows sues him, *because that's never going to happen.* If he agrees that that's the way we can proceed, we will proceed notwithstanding this document.

(Doc. No. 182 at 4 (emphasis added); *see also id.* at 3:6-13 ("And I said no way and that's pretty much where we are.").) By any standard, there was no mutual consent to this term.

10

17-CV-362-H(WVG)

Accordingly, the "option" to enforce the original settlement terms with the addition of Guelton's indemnification term is a non-starter.

### ii. No Mistake of Fact; Any Risk for Mistake is Guelton's

The Court now addresses a potential argument Guelton may employ to attempt to avoid the settlement agreement. At the abbreviated May 31, 2019 hearing at which Plaintiff's counsel failed to appear, defense counsel suggested that the settlement should be set aside in part due to a mistake of fact. (Doc. No. 181 at 4.) He presumably referenced the supposed mistaken existence of the SheKnows release agreement, which relates to Guelton's assignment of any claims he may have against the releases covered by that agreement.

However, setting aside the settlement under the circumstances of this case would be untenable because there was no mistake of fact here—only complete lack of diligence despite having ample opportunity. The lack of diligence here is assignable only to Guelton, who failed to conduct the required investigation to discover the boundaries of any claims he was to assign Plaintiff. This despite the Court's ending the March 25, 2019 in-person settlement conference and giving Guelton the opportunity to search for documents and information relevant to this issue. Guelton instead buried his head in the sand, entered into a settlement on the record, and later sprung the release agreement on Plaintiff and demanded that he be indemnified in the event he is sued. To explain his conduct, he claims he either forgot about, or wasn't aware of, the importance of the release agreement because the release of insurance claims was one sentence buried in the middle of a large paragraph. However, even if Guelton forgot about the release agreement and this forgetfulness qualifies as a mistake, all of the risk of the consequences of this mistake should be allocated only to him. The same should result if Guelton was mistaken about the importance of the release agreement.

California law permits a party to rescind a contract if, among other reasons, "the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake . . ." Cal. Civ. Code § 1689(b)(1). California Civil Code section 1577 in turn

defines "mistake of fact": "Mistake of fact is a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in: [¶] 1. An unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or, [¶] 2. Belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed."

The contours of the mistake-of-fact doctrine were examined in *Donovan v. RRL Corp.*, 26 Cal. 4th 261 (Cal. 2001). The California Supreme Court determined that a defendant in a contract dispute who was claiming mistake of fact "must establish the following facts to obtain rescission of the contract: (1) the [party] made a mistake regarding a basic assumption upon which the defendant made the contract; (2) the mistake has a material effect upon the agreed exchange of performances that is adverse to the [party]; (3) the [party] does not bear the risk of the mistake; and (4) the effect of the mistake is such that enforcement of the contract would be unconscionable." *Id.* at 282. Thus, at bottom, a mistake of fact makes a contract *voidable* by the party who is adversely affected by the mistake *if* he does not bear the risk of the mistake. *Id.*; *Rawson v. YD Enters., LLC*, No. D071071, 2017 Cal. App. Unpub. LEXIS 3202, at *20 (May 8, 2017) (same with respect to mutual mistake of fact) (citing Restatement 2d of Contracts § 152) (unpublished).

Here, the first question to decide is which party is adversely impacted by Guelton's supposed mistake. Although at first blush it may seem Plaintiff would be that party, it is actually Guelton himself. Despite the post-settlement production of the release agreement, Plaintiff nonetheless wishes to proceed with the settlement made on the record. He simply does not wish to have an additional non-negotiated indemnity term foisted upon him. With respect to who may be adversely impacted by proceeding with the original settlement, Plaintiff's counsel set forth the potential downstream implications of the undisclosed release agreement as follows:

> We did put everything on the record, including assignment of the bad faith rights, incumbent with that was, you know, obviously a representation

that there were rights to assign,[9] not that it would go the other way around.

So what I propose is the following, if Mr. Guelton is not willing to accept the terms as is, in other words he assigns us the rights and we go after those rights, you know, without any qualification, without any agreement on our part to indemnify him if SheKnows sues him, because that's never going to happen. If he agrees that's the way we can proceed, we will proceed notwithstanding this document.

If SheKnows sues Mr. Guelton in a cross complaint as a result of our bad faith lawsuit, that's on him. And if SheKnows gets out, and by SheKnows, I mean SheKnows insurance company, if SheKnows insurance company gets out on summary judgment or something else, we have the right to pursue Mr. Guelton for all damages arising out of a breach of the settlement agreement that was in principle based on a material term that he had bad faith rights to assign.
So we're ready to proceed on the terms.
. . . .
Notwithstanding this document we're ready to proceed, we will proceed, and, again, if cross action happens against Mr. Guelton, that's on him. If there are no bad faith rights to assign that a court of competent jurisdiction, in other words, you know, the agreement that he signed to release those rights, if there's an adjudication of that issue against us, we will pursue Mr. Guelton for breach of the settlement agreement.

(Doc. No. 182 at 4-5.) Thus, in the long term, Guelton's purported mistake would likely adversely impact him the most.

---

[9] Defense counsel found this representation "outrageous" because the settlement agreement called for Guelton to assign "whatever rights" he had, which Plaintiff should have understood were limited because the defense had apparently conveyed to Plaintiff's counsel "from day one" of this case that there was little likelihood of a bad faith claim being successfully pursued against Guelton and also because there was never a representation or guarantee that Guelton actually had any rights to convey. Based on this Court's participation in settlement discussions, defense counsel is correct insofar as there was no affirmative representation by Guelton at the March 25, 2019 in-person settlement conference that he actually held any claims to assign—simply that he would assign "whatever rights [he] may have retained." (Doc. No. 182 at 6:7-20.)

Having identified Guelton as the adversely-affected party, the Court next finds that he cannot satisfy the third element of the *Donovan* analysis: whether adversely affected party bears the risk of the mistake.[10]  *See Donovan*, 26 Cal. 4th at 282.  Here, Guelton should bear the full risk of his supposed mistake under the circumstances of this case for several reasons.  First, the release agreement was solely in Guelton's possession and within his knowledge since at least February 26, 2018, the date it was executed.[11]  (*See* Doc. No. 178-1 at 39.)  Second, Guelton was not forced to agree to the claim assignment term on the spot at the March 25, 2019 settlement conference because the case did not settle that day. Third, once the assignment of claims became known as a possible term in this settlement, Guelton was on notice that he should search his documents and discover anything that was relevant to that issue.  In fact, the settlement conference concluded with the parties understanding that Guelton was going to do just that—search his papers and produce any documents and information that bore on the value of his assignable claims, if any existed. Thus, Guelton was specifically on notice and had opportunity to research.  Fourth, despite being on notice and being provided the opportunity to investigate this issue, Guelton failed

---

[10] Because Guelton cannot satisfy the third element of the four-part conjunctive analysis, the Court need not discuss the remaining *Donovan* elements.  *See Rodney W. Jessen v. Oie*, No. H032364, 2008 Cal. App. Unpub. LEXIS 8099, at *17 (Cal. Ct. App. Sep. 30, 2008) ("[T]he four *Donovan* elements are expressed in the conjunctive.  The party seeking rescission must prove all four.") (unpublished); *id.* at *23 ("In obtaining rescission for any mistake, whether bilateral or unilateral, the party seeking rescission must always prove the first three elements recited by *Donovan*.").

[11] There is no evidence that Plaintiff or his counsel knew about the release agreement such that Plaintiff bears some responsibility here.  *See generally Conservatorship of O'Connor*, 48 Cal. App. 4th 1076, 1097 (Cal. Ct. App. 1996) ("Many courts have held that a unilateral mistake is ground for rescission only if the mistake is known to the other contracting party and is encouraged or fostered by that party.  A much relaxed version of this rule provides that, if the proponent of the contract had reason to know of the mistake, the mistaken party can avoid the contract.").  Indeed, Guelton's own counsel did not know about the agreement until after the settlement had been entered on the record and the written settlement agreement had been drafted.  (Doc. No. 182 at 3-4.)

to diligently investigate the matter. Finally, no one else in this case besides Guelton—a signatory to the release agreement—had the ability to discover the existence of the release agreement, which was solely within Guelton's possession and knowledge.

Accordingly, because Guelton had ample opportunity to investigate the existence of the release agreement—an agreement that was *solely* within his possession and knowledge—before he entered into the binding settlement agreement on the record before this Court, the full risk of the supposed mistake should be borne by him alone. *See Grenall v. United of Omaha Life Ins. Co.*, 165 Cal. App. 4th 188, 193 (Cal. Ct. App. 2008) ("[T]he court may allocate the risk to a party because it is reasonable under the circumstances to do so."); *see also BMW Fin. Servs. NA, LLC v. Deloach*, No. G053021, 2017 Cal. App. Unpub. LEXIS 3203, at *9 (May 8, 2017) ("A party bears the risk of a mistake when . . . (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.") (quoting Restatement Second of Contract, § 154) (unpublished).

The Court's reasoning may have been different had Guelton entered into a settlement on the day of the March 25, 2019 settlement conference without the opportunity to research whether he had any claims he could assign to Plaintiff. Had this been the case, Guelton could now credibly argue that he did not have the opportunity to look through his papers, discover the release agreement and have his attorneys review it and advise him as to its significance. Under this scenario, Guelton could credibly argue he was surprised when he later discovered the release agreement that contained a release of insurance claims. He could credibly argue that he could have discovered the release agreement and its importance had he been allowed to leave the March 25, 2019 settlement conference to investigate this issue. However, these are not the facts here. Rather, Guelton *was* given leave to investigate, and he had ample opportunity to discover these facts. At the first settlement conference on March 25, 2019, the very reason the case did not settle that day and was continued was to allow Guelton the opportunity to look for and provide Plaintiff any and all documents and information relevant to Guelton's assignment of claims to Plaintiff as part of the settlement. That, of course, required Guelton to search his papers to

discover anything that would impact his assignable claims. The SheKnows release agreement was precisely the type of document Guelton should have discovered after a reasonably diligent search. However, as the Court discovered on the March 28, 2019 status conference, Guelton did not conduct any search—let alone a diligent one—and had completely failed to communicate with Plaintiff after the settlement conference. Failure to investigate is not synonymous with being mistaken, and Guelton rightfully should bear the risk of his inaction.

### 3. Lawful Object

The object of the settlement is lawful as it requires Guelton to make a settlement payment and assign certain future legal claims in exchange for Plaintiff's release of his claims against him in the instant case. *See Madani v. Cty. of Santa Clara*, 2019 U.S. Dist. LEXIS 16736, at *21 (N.D. Cal. Jan. 31, 2019) (settlement payment in exchange for release of claims is a lawful object of settlement agreement).

### 4. Consideration

Finally, the settlement is supported by consideration. Consideration is satisfied when a party (1) confers or agrees to confer a benefit on a party not entitled to that benefit, or (2) suffers or agrees to suffer a prejudice that a party is not legally bound to suffer. Cal. Civ. Code § 1605; *see* 1 Witkin, Summary 11th Contracts § 202 (2018) ("Consideration may be an act, forbearance, change in legal relations, or a promise."). Here, the settlement requires Guelton to pay Plaintiff a settlement payment, and in exchange, Plaintiff will dismiss his claims against Guelton. Therefore, the settlement is supported by consideration. *Madani*, 2019 U.S. Dist. LEXIS 16736, at *24 (settlement supported by consideration where it required settlement payment in exchange for dismissal of lawsuit).

**B.  The Settlement Agreement is Complete; An Evidentiary Hearing is Not Required Under the Circumstances Here**

The Ninth Circuit has cautioned that district courts "may enforce only complete settlement agreements." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). "A complete agreement is "one where the parties have manifested their mutual assent to all the material

terms." *Lee v. Retail Store Emple. Bldg. Corp.*, No. 15CV4768-LHK, 2018 U.S. Dist. LEXIS 5707, at *13 (N.D. Cal. Jan. 10, 2018) (citation and quotations omitted). "Where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *Callie*, 829 F.2d at 890 (citations omitted). The Court must hold an evidentiary hearing "[w]here material facts concerning the *existence* or *terms* of an agreement to settle are in dispute . . . ." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) (emphasis in original).

Here, there can be no dispute what the material terms of the agreement were or whether the parties assented to them.[12] Unlike other cases where settlement is reached out of court and a dispute over terms exists, there can be no such dispute here. The Ninth Circuit's opinion in *Doi v. Halekulani Corp.*, 276 F.3d 1131 (9th Cir. 2002) is directly on point:

> In the typical case when one party seeks to enforce a settlement agreement against another, parties exchange phone calls and e-mails, and perhaps even drafts of a settlement agreement, outside of court. At some point in the process, one party concludes that a final agreement has been reached; the other party, however, disagrees. We can understand how a party could dispute having made a binding agreement in such a case.
>
> This, however, is not the typical case. Rather, here, the plaintiff made a binding settlement agreement in open court: when read the terms of the agreement, and asked if she agreed with them, Doi simply responded, "yeah." At a time where the resources of the federal judiciary, and this Circuit especially, are strained to the breaking point, we cannot countenance a plaintiff's agreeing to settle a case in open court, then subsequently disavowing the settlement when it suits her. The courts spend enough time

---

[12] An evidentiary hearing is not required to examine whether Guelton's indemnity term was part of the settlement. Guelton's *post hoc* attempt to foist this term upon Plaintiff is simply an attempt to avoid the consequences of his own inaction. Because the release agreement—and its future implications—was not known to Plaintiff before the settlement was struck, the resulting need for Plaintiff's indemnification of Guelton was never discussed or contemplated. Thus, there is no dispute whether indemnity was part of the settlement—it was not.

on the merits of litigation; we need not (and therefore ought not) open the flood gates to this kind of needless satellite litigation.

Thus, we cannot say that the district court abused its discretion by finding that Doi's response in open court, after the terms of the settlement agreement were recited, constituted a binding agreement to settle.

*Doi*, 276 F.3d at 1141. Because both the terms of the settlement and the parties' mutual assent thereto is clear, an evidentiary hearing is not required. *Id.* at 1139 ("[T]here was no need for an evidentiary hearing on whether an agreement existed, or what its terms were: the parties dispelled any such questions in open court.").

## IV. CONCLUSION

In sum, the parties here entered into a complete settlement agreement after arms-length negotiations while represented by counsel. They then memorialized their understanding of—and consent to—those terms on the record before this Court. At that point, they entered into a binding contract that was voidable under very limited circumstances. Guelton's claimed mistake—if the Court gives him the benefit of the doubt and characterizes his inaction as a mistake—does not qualify as such a circumstance. Because he rightfully bears the risk of consequences that flow from the mistake, he cannot now rescind the agreement. This Court accordingly RECOMMENDS enforcing the settlement entered on the record before this Court and entering Judgment against Guelton thereon.[13]

---

[13] Upon entering judgment, the Court occasionally retains jurisdiction over future settlement disputes that may arise after Judgment is entered. The parties here seem to believe this Court agreed to retain jurisdiction over the Maksoud-Guelton settlement for these purposes. That belief is incorrect. Although the Court's retention of jurisdiction was discussed at the first settlement conference, that subject was never discussed when the Maksoud-Guelton settlement was placed on the record. (*Compare* Doc. No. 183 at 2-11 (Guelton settlement); *with id.* at 22:12, 23:1, 24:2 24:14-15 (discussing retaining jurisdiction over the *Payton* settlement).) This Court will now expressly address this matter since it was not discussed on April 2, 2019. In the event the Court enters final Judgment in this case as to Guelton, this Court **expressly declines to retain further jurisdiction**

**over this matter** to enforce the settlement given (1) Plaintiff's counsel's continuous insolent behavior towards this Court and, more importantly, (2) the necessarily open-ended duration of the jurisdiction retention this case would require given that what will transpire in the future between these parties—and for how long it will transpire—is completely uncertain. Plaintiff's counsel has on more than one occasion missed important deadlines or ignored orders and clear mandates of this Court. His failure to file a motion to enforce the settlement by the clear deadline the Court set, his subsequent filing of the untimely motion despite the Court denying him leave to file it untimely, and his subsequent failure to appear at the May 31 hearing are just three examples. The Court's exercise of its discretionary retention of jurisdiction over this settlement is not a privilege Plaintiff has earned. *See Seldon v. George Brown Sports Club - Palm, LLC*, No. 17CV1421-DAD(SAB), 2019 U.S. Dist. LEXIS 1246, at *1-2 (E.D. Cal. Jan. 2, 2019) ("The decision to retain jurisdiction [over settlement agreements] is discretionary and not mandatory.") (citing *HM Elec., Inc. v. R.F. Techs., Inc.*, No. 12CV2884-BAS(MDD), 2016 U.S. Dist. LEXIS 183287, at *3-4 (S.D. Cal. Feb. 17, 2016) (Bashant, J.).) And given Guelton's dubiously ill-timed post-settlement discovery of a critical document, he too should not receive any benefit to be derived from this Court retaining jurisdiction ad infinitum over the settlement.

With respect to the Maksoud-Payton settlement, it bears noting that there is no continuing jurisdiction over that settlement. When that settlement was placed on the record, this Court orally agreed to retain jurisdiction for the limited purpose of enforcing the settlement. The Court's staff then immediately emailed a completed "Consent to Exercise Settlement Jurisdiction by a United States Magistrate Judge and Order of Reference" form to attorney Lazo and Payton with specific instructions that it should be *filed*. It was never filed. Instead, Maksoud and Payton's motion to dismiss Payton from this suit directed the Court to retain jurisdiction. (Doc. No. 174 ¶ 4.) The Court did not do so. (*See* Doc. No. 176.)

It is insufficient that the Court orally agreed to retain jurisdiction, as there can be no continuing jurisdiction unless the judgment or dismissal order contains language expressly retaining jurisdiction or incorporating the settlement agreement. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994) (holding the district court lacked jurisdiction over a motion to enforce settlement following entry of a stipulated dismissal with prejudice where there was no provision in the settlement agreement retaining jurisdiction, and the settlement agreement was not incorporated into the order dismissing with prejudice); *Hajro v. U.S. Citizenship & Immigration Servs.*, 811 F.3d 1086, 1099 (9th Cir. 2016) ("If a district court wishes to retain jurisdiction to later enforce the terms of a settlement agreement, the order dismissing a case with prejudice must incorporate the terms of the settlement agreement or expressly retain jurisdiction."). When the Court dismissed Payton from this

**IT IS ORDERED** that no later than **August 1, 2019** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to objections shall be filed with the Court and served on all parties no later than **August 8, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal. *Martinez v. Ylst*, 951 F2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: July 17, 2019

_____
Hon. William V. Gallo
United States Magistrate Judge

---

case with prejudice, it did so without expressly reserving jurisdiction or incorporating the settlement into the dismissal Order. (Doc. No. 176.) Accordingly, continuing jurisdiction over the Maksoud-Payton does not exist, and Maksoud must separately sue Payton in state court in the event he does not make payments "unless there is some independent basis for federal jurisdiction." *Kokkonen*, 511 U.S. at 381-82.