**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DR. CHARBEL MAKSOUD, <br><br> Plaintiff, <br><br> v. <br><br> BRUCE HOPKINS, et al., <br><br> Defendants. | Case No.: 3:17-cv-00362-H-WVG <br><br> **ORDER:** <br><br> **(1) ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (Doc. No. 184);** <br> **(2) ENFORCING SETTLEMENT;** <br> **(3) REQUIRING PARTIES TO FILE A STATUS UPDATE IN 30 DAYS;** <br> **(4) DENYING AS MOOT DEFENDANT GUELTON'S MOTIONS IN LIMINE (Doc. Nos. 157, 158, 159, 160, 161)** |

On July 17, 2019, the magistrate judge issued a report and recommendation ("R&R") recommending that the Court summarily enforce the settlement agreement entered between Plaintiff Charbel Maksoud and Defendant Philippe Guelton, and enter final judgment. (Doc. No. 184.) Guelton filed his objections to the R&R on August 1, 2019. (Doc. No. 185.) Maksoud replied to the objections on August 8, 2019. (Doc. No. 187.) With the
1

3:17-cv-00362-H-WVG

Court's leave, Guelton filed a sur-reply on August 12, 2019. (Doc. Nos. 188, 188-1, 190.) For the following reasons, the Court adopts the R&R and enforces the settlement agreement. The Court also denies as moot Guelton's five motions in limine.

## **BACKGROUND**

This action involves a shareholder dispute in which Maksoud invested in a now-defunct company, BT Software and Research, Inc. ("BT").[1] (Doc. No. 35) Guelton was involved with BT as an advisor and then as a board member. (Doc. No. 135 at 2–3.) Maksoud brought numerous claims against Guelton and other persons involved with BT. (Doc. No. 35.) At this point in time, Guelton is the only remaining Defendant in the case.

After confirming the availability of the parties and counsel, the Court scheduled trial to commence on April 18, 2019. (Doc. No. 149.) On March 25, 2019, the magistrate judge conducted a Mandatory Settlement Conference with the parties, but settlement was not reached on that day. (Doc. No. 155.) The parties agreed to conduct another settlement conference after opportunity to exchange information and documentation. (See Doc. No. 182 at 6–7.) Guelton specifically agreed to provide Maksoud any information to help Maksoud determine the value of a proposed assignment of Guelton's legal claims against insurance carriers. (Id.) The magistrate judge then conducted a further settlement conference on March 28, 2019, at which the parties stated that they had not communicated at all since the prior conference, despite their agreement to do so. (Id.)

The parties then reached a settlement agreement on April 2, 2019, and the magistrate judge conducted a teleconference to memorialize the terms of the agreement. (Doc. No. 183.)[2] Maksoud and his counsel, Marc Lazo, appeared. (Id. at 2.) Guelton and his counsel, Dariush Adli, appeared. (Id.) Lazo stated the terms of the settlement on the record, and all

---

[1] The factual background of this case is given in greater detail in the Court's prior order granting in part and denying in part Guelton's motion for summary judgment, Doc. No. 135.

[2] Maksoud also resolved his claims against Defendant Tirrell Payton at that settlement conference. (Doc. Nos. 166, 168.) Maksoud and Payton then filed a joint motion to dismiss Payton with prejudice, which the Court granted on April 30, 2019. (Doc. No. 176.) The Court did not retain jurisdiction over the enforcement of that settlement. (See id.)

parties and counsel confirmed on the record that Lazo's recitation was accurate. (Id. at 7–9.) Under the settlement agreement, Maksoud would dismiss with prejudice all claims against Guelton in exchange for: (1) Guelton paying Maksoud a $17,500 lump sum within 10 days of full execution of the settlement agreement; and (2) Guelton executing a written assignment of rights, assigning Maksoud "rights to prosecute any and all claims against any and all insurance companies who could potentially have afforded coverage for Mr. Guelton's defense in this case[.]" (Id. at 7–8.) Further, both parties agreed to waive attorneys' fees and costs, and to execute any additional documentation necessary to consummate the settlement. (Id. at 8.) After Lazo recited these terms, both Maksoud and Guelton stated that they understood and agreed to be bound by the terms. (Id. at 9.) Because the essential terms of the settlement had been memorialized on the record, the magistrate judge set a schedule for exchanging drafts of the settlement agreement, the execution and payment of the settlement agreement, and a deadline for filing a joint motion to dismiss. (Doc. No. 167.) Because the case had been resolved, the Court vacated the trial dates and reminded the parties that they remained obligated to comply with the magistrate judge's orders. (Doc. No. 169.)

The magistrate judge then held a status conference on April 10, 2019 because a problem with the settlement had arisen. (Doc. Nos. 170, 171.) Lazo, appearing for Maksoud, reported that after the parties exchanged settlement agreement drafts, Guelton produced a release agreement that had at no point prior been discussed or disclosed. (Doc. No. 182 at 2–3.) The release agreement, executed by Guelton, released all claims that Guelton may have held against his former employer and former defendant in this case, SheKnows Media ("SheKnows"). (Id.) The release covered any bad faith claims that SheKnows may have had against its insurers. (Doc. No. 178-1 at 35.) Adli, appearing for Maksoud, stated that he did not know about the release agreement until after he sent the written settlement agreement to Guelton for his review. (Doc. No. 182 at 3–4.) When Guelton sent the written settlement draft back to Adli, he told Adli that he had found the release agreement. (Id.)

3

| | |
|---|---|
| 1 | In light of this, Guelton asked Maksoud to include in the settlement agreement a term requiring Maksoud to indemnify Guelton if he is ever sued by SheKnows for breach of the release agreement. (Id. at 3.) Maksoud rejected the request, demanding that the parties proceed with the settlement agreement as memorialized on the record. (Id. at 4–5.) Thus, the magistrate judge directed the parties to meet and confer, and agreed to accept a motion to enforce the settlement if the parties could not resolve the dispute on their own. (Doc. No. 172.) The magistrate judge issued a briefing schedule, stating that any motion by Plaintiff to enforce the settlement was due by April 23, 2019. (Id.) Guelton's opposition would be due May 1, 2019, and the magistrate judge would conduct a hearing on the motion on May 31, 2019. (Id.) |

The deadline expired, and Maksoud had not filed any motion. On April 29, 2019, the magistrate judge then held a telephonic status conference with counsel for the parties because Maksoud wanted to file an untimely motion. (Doc. No. 180.) The magistrate judge denied Maksoud leave to file the untimely motion. (Id. at 5.) However, the magistrate judge stated that the May 31st attorneys-only hearing would remain on the calendar so that the parties could argue their positions in-person. (Id.) Despite the magistrate judge's clear instruction, Maksoud filed his untimely motion anyway on May 3, 2019. (Doc. No. 178.) The magistrate judge struck this motion from the record because Maksoud did not have the Court's leave to file the untimely motion. (Id.)

On May 31, 2019, the magistrate judge convened a hearing as scheduled to permit the parties to be heard on the issue of settlement enforcement. (Doc. Nos. 172 at 2; 180 at 5.) Charles Ferrari appeared for Guelton. (Doc. No. 181 at 2.) Maksoud's counsel failed to appear. (Id. at 2–3.) The magistrate judge allowed Ferrari to briefly speak, but then to avoid ex parte communications, terminated the proceedings when Ferrari began to substantively argue. (Id. at 5.) After the hearing, the magistrate judge issued a sua sponte R&R recommending that the Court summarily enforce the settlement agreement on the terms that were memorialized on record and enter final judgment.

///

# DISCUSSION

## I. Legal Standard

"It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it." Callie v. Near, 829 F.2d 888, 890 (9th Cir. 1987). This includes instances where a settlement agreement is entered on the record, but then reneged by either party. See Henderson v. Yard House Glendale, LLC, 456 F. App'x 701, 702 (9th Cir. 2011) ("The district court did not abuse its discretion in enforcing the settlement agreement after Henderson entered into it on the record in open court, but later refused to execute a formal agreement[.]"). The requirements for court-enforcement of a settlement are that (1) the agreement be complete, id., and (2) both parties must have either agreed to the terms of the settlement or authorized their respective counsel to settle the dispute, Harrop v. Western Airlines, Inc., 550 F.2d 1143, 1144–45 (9th Cir. 1977). The Court will interpret the agreement pursuant to "familiar principles of contract law." Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir. 1989). In California, "[t]he essential elements of a contract are: parties capable of contracting; the parties' consent; a lawful object; and sufficient cause or consideration." Lopez v. Charles Schwab & Co., 118 Cal. App. 4th 1224, 1230 (2004) (citing Cal. Civ. Code § 1550).

## II. Analysis

After thorough consideration of the magistrate judge's R&R and the parties' arguments, the Court concludes that the parties entered into an enforceable settlement agreement on April 2, 2019.[3] The Court therefore, in agreement with the magistrate judge, concludes that enforcement of the settlement is proper.

Neither party disputes that three of the requisite contract elements under California law are met here—the parties are capable of contracting, the object of the settlement

---

[3] The parties do not dispute that no written agreement was required under these circumstances. "[U]nless a writing is required by the statute of frauds, oral settlement agreements are enforceable in the same manner as oral agreements in general." Nicholson v. Barab, 233 Cal. App. 3d 1671, 1672 (1991). The parties' settlement agreement is not one of the types of agreements that is invalid without a writing under California's statute of frauds. See Cal. Civ. Code § 1624.

5

agreement is lawful, and there is sufficient consideration for the agreement. (See Doc. No. 185 at 9.) Therefore, the Court turns its analysis to whether the parties agreed to the terms of the settlement agreement, whether the settlement agreement is complete, and whether the agreement should be rescinded due to mistake of fact.

### A. Consent to Terms of the Agreement

In order for the Court to enforce a settlement, both parties must have either agreed to the terms of the settlement or authorized their respective counsel to settle the dispute, Harrop, 550 F.2d at 1144–45. California law also "requires that the parties' reach mutual assent or consent on definite or complete terms." Netbula, LLC v. BindView Dev. Corp., 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007) (citing Merced County Sheriff's Employees' Ass'n v. Merced County, 188 Cal. App. 3d 662, 670 (1987)). "Mutual assent may be manifested by written or spoken words, or by conduct[.]" Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 565 (9th Cir. 2014) (citing Binder v. Aetna Life Ins. Co., 75 Cal. App. 4th 832, 850 (1999)). "Courts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." Id. (citing Meyer v. Benko, 55 Cal. App. 3d 937, 942–43 (1976)).

Here, the both Guelton and Maksoud expressly agreed to the essential terms of the settlement agreement on the record before the magistrate judge. During the April 2, 2019 teleconference held by the magistrate judge, Guelton and Maksoud each appeared, along with their respective counsel. (Doc. No. 183 at 2.) Lazo, Maksoud's counsel, recited the following essential terms of the settlement agreement:

> Dr. Maksoud will dismiss all claims with prejudice against Mr. Guelton, including a Civil Code Section 1544 waiver, in exchange for the following two items of consideration:
>
> The first being payment of $17,500 in one lump sum, readily available funds, within 10 days of full execution of the settlement agreement, and a written assignment of rights to prosecute any and all claims against any and all insurance companies who could potentially have afforded coverage for Mr. Guelton's defense in this case, which assignment will be incorporated into the settlement agreement.

. . . .

> Both parties waive attorneys' fees and costs and will agree to execute any additional documentation necessary to consummate the settlement.

(Id. at 7–8.) Adli, Guelton's counsel, confirmed that Lazo had accurately recited the material and essential terms of the settlement agreements. (Id. at 8.) Guelton and Maksoud then each confirmed that Lazo accurately recited the terms, and that they understood and agreed to be bound by the terms. (Id. at 8–9.) By doing so, the parties undoubtedly manifested their mutual assent to settlement of this case based on the terms recited by Lazo on record before the magistrate judge.[4]

### B. Completeness

The Court may only enforce a settlement agreement if it is complete. Callie, 829 F.2d at 890. "The formation of a settlement contract requires agreement on its material terms." Id. at 891. "[W]here material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." Id. at 890. An evidentiary hearing is not required where the settlement agreement itself is not disputed. See Calcor Space Facility, Inc. v. McDonnell Douglas Corp., 5 F. App'x 787, 789 (9th Cir. 2001).

Here, the settlement agreement is complete because the parties agreed to the settlement terms on record. At the April 2, 2019 hearing, Lazo stated on record all of the terms essential to the settlement agreement, and both Guelton and Maksoud stated that they understood and agreed to the terms. (See Doc. No. 183 at 7–9.) As aptly noted by the magistrate judge, Doi v. Halekulani Corp., 276 F.3d 1131 (9th Cir. 2002) is akin to the situation presented here. There, the Ninth Circuit stated:

///
///

---

[4] The parties mutually assented to only those terms listed by Lazo on the record at the April 2, 2019 teleconference. This does not include Guelton's later proposal for adding a term requiring Maksoud to indemnify Guelton if he is ever sued by SheKnows for breach of the release agreement. (Doc. No. 182 at 3.) Maksoud expressly and clearly declined to assent to this term. (Id. at 4–5.)

7

> In the typical case when one party seeks to enforce a settlement agreement against another, parties exchange phone calls and e-mails, and perhaps even drafts of a settlement agreement, outside of court. See, e.g., Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320 (2d Cir. 1997). At some point in the process, one party concludes that a final agreement has been reached; the other party, however, disagrees. We can understand how a party could dispute having made a binding agreement in such a case.
>
> This, however, is not the typical case. Rather, here, the plaintiff made a binding settlement agreement in open court: when read the terms of the agreement, and asked if she agreed with them, Doi simply responded, "yeah." At a time where the resources of the federal judiciary, and this Circuit especially, are strained to the breaking point, we cannot countenance a plaintiff's agreeing to settle a case in open court, then subsequently disavowing the settlement when it suits her. The courts spend enough time on the merits of litigation; we need not (and therefore ought not) open the flood gates to this kind of needless satellite litigation.

Id. at 1141. Further, no evidentiary hearing is required here because the parties do not dispute the existence or terms of the agreement. See id. at 1139 ("Thus, there was no need for an evidentiary hearing on whether an agreement existed, or what its terms were: the parties dispelled any such questions in open court."). Therefore, the Court may enforce the April 2, 2019 settlement agreement because the parties consented to its terms and it is complete, and no evidentiary hearing is required.

### C. Mistake of Fact

Guelton objects to the magistrate judge's R&R on the grounds that settlement agreement should be rescinded because he made a material mistake of fact, he promptly gave notice of rescission, he should not bear the risk of the mistake, and enforcement would be unconscionable. (Doc. No. 185.) In anticipation of this, the magistrate judge's R&R concludes that "setting aside the settlement under the circumstances of this case would be untenable because there was no mistake of fact here—only complete lack of diligence despite having ample opportunity." (Doc. No. 184 at 11.) The Court concludes that the settlement agreement should not be rescinded.

California law permits a party to rescind a contract if "the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake[.]" Cal. Civ.

Code § 1689(b)(1). California law defines "mistake of fact" as "a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in: 1. An unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or, 2. Belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed." Id. § 1577. A party claiming mistake of fact "must establish the following facts to obtain rescission of a contract: (1) the defendant made a mistake regarding a basic assumption upon which the defendant made the contract; (2) the mistake has a material effect upon the agreed exchange of performances that is adverse to the defendant; (3) the defendant does not bear the risk of the mistake; and (4) the effect of the mistake is such that enforcement of the contract would be unconscionable." Donovan v. RRL Corp., 26 Cal. 4th 261, 264 (2001), as modified (Sept. 12, 2001). "In obtaining rescission for any mistake, whether bilateral or unilateral, the party seeking rescission must always prove the first three elements recited by Donovan." Jessen v. Oie Lian Yeh, No. H032364, 2008 WL 4411567, at *8 (Cal. Ct. App. Sept. 30, 2008) (unpublished).

Here, Guelton has failed to establish the Donovan elements necessary for rescission of the settlement agreement. Guelton is the adversely affected party, but any potential adverse effects are merely speculative at this time. As part of the settlement agreement, Guelton agreed to assign Maksoud "rights to prosecute any and all claims against any and all insurance companies who could potentially have afforded coverage for Mr. Guelton's defense in this case[.]" (Doc. No. 183 at 7–8.) This would allow Maksoud to bring claims against SheKnows or its insurer. (See Doc. No. 182 at 4–5.) In turn, SheKnows could sue Guelton for breach of the release agreement. This is why Guelton requested an indemnification term be added to the agreement, which Maksoud declined. (Id. at 3–5.)

However, a contract will only be rescinded due to mistake if the party arguing for rescission was the adversely-affected party and does not bear the risk of the mistake. See Donovan, 26 Cal. 4th at 264. Here, based on the circumstances, Guelton should bear the risk. "[T]he court may allocate the risk to a party because it is reasonable under the

circumstances to do so." Grenall v. United of Omaha Life Ins. Co., 165 Cal. App. 4th 188, 193 (2008) (citing Donovan, 26 Cal. 4th at 283). California law "instructs that the risk of a mistake must be allocated to a party where the mistake results from that party's neglect of a legal duty." Donovan, 26 Cal. 4th at 283 (citing Cal Civ. Code § 1557; M.F. Kemper Const. Co. v. City of L.A., 37 Cal. 2d 696 (1951)).

Here, the release agreement was solely within Guelton's possession and knowledge since at least its execution date of February 26, 2018. (See Doc. No. 178-1 at 39.) Nothing indicates that Maksoud or his counsel had any knowledge of the release agreement or bear any responsibility for the late-disclosure of the release agreement. Guelton only agreed to the settlement terms at the April 2, 2019 teleconference after the magistrate judge gave him opportunity to investigate his records. On March 25, 2019, the magistrate judge held a Mandatory Settlement Conference with the parties, but settlement was not reached on that day. (Doc. No. 155.) The parties agreed to conduct another settlement conference after opportunity to exchange information and documentation. (See Doc. No. 182 at 6–7.) Guelton specifically agreed to provide Maksoud any information to help Maksoud determine the value of a proposed assignment of Guelton's legal claims against insurance carriers. (Id.) The magistrate judge then conducted a further settlement conference on March 28, 2019, at which the parties stated that they had not communicated at all since the prior conference, despite their agreement to do so. (Id.) Thus, Guelton was on notice that he should review his documents for anything relevant to the settlement agreement's terms and had opportunity to do so before voluntarily settling on April 2, 2019.

At this time, Guelton's concerns regarding the settlement agreement's terms are merely speculative. Nothing indicates that Guelton has any claims against SheKnows or its insurers that would be assigned to Maksoud, or that SheKnows would take action against Guelton. By settling this case on the eve of trial, the parties have avoided the substantial costs of going to trial. Further, by going to trial, Guelton would have risked liability of $250,000. (See Doc. No. 35.) The terms of the settlement agreement are favorable to the parties as an efficient resolution of the case. The Court therefore concludes that Guelton

should bear the risk of his late-disclosure of the release agreement, and Guelton has failed to show that the settlement agreement should be rescinded due to mistake of fact. Accordingly, the Court concludes that the settlement agreement entered by the parties on record should be enforced because it meets the California contract requirements, the parties consented to its terms, and it is complete.

## **CONCLUSION**

For the foregoing reasons, the Court adopts the magistrate judge's report and recommendation. The Court therefore enforces the settlement agreement entered on the record before the magistrate judge on April 2, 2019. The Court orders Guelton to comply with the terms of the settlement agreement and pay Maksoud $17,500 within **30 days**. The Court orders the parties to file a status report in **30 days**. The Court reserves the right to take appropriate action if the parties fail to comply with the Court's orders. The Court denies as moot Guelton's motions in limine, Doc. Nos. 157, 158, 159, 160, 161.

**IT IS SO ORDERED.**

DATED: August 13, 2019

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT